## MICHAELA I. ALEXANDRU *v.* GLENN W. DOWD
### (AC 22938)

Lavery, C. J., and Bishop and McLachlan, Js.

---

Argued June 10—officially released September 16, 2003

*Michaela I. Alexandru*, pro se, the appellant (plaintiff).

*Francis H. Morrison III*, with whom, on the brief, was *Karen A. Moreno*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff, Michaela I. Alexandru, appeals from the summary judgment rendered by the trial court in favor of the defendant, Glenn W. Dowd. On appeal, the plaintiff claims that the court improperly rendered summary judgment in favor of the defendant because it improperly determined that the defendant had an absolute privilege. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's claim. The operative complaint in this case is the third amended complaint, filed on October 20, 2000. It consists of five counts alleging libel, slander, invasion of privacy, intentional infliction of emotional distress and abuse of pro-

cess.[1] The allegations contained in that complaint reveal that in the mid-1990s the plaintiff initiated an action against her former employer, Northeast Utilities Services Company (Northeast Utilities), in federal court, alleging, inter alia, sexual harassment and negligent and intentional infliction of emotional distress. In that case, the plaintiff claimed that as a result of the tortious conduct of her employer, she suffered severe emotional distress and that the stress caused her to suffer a miscarriage.

The defendant in the present action is an attorney who represented Northeast Utilities in the previous action. In the present action, each of the plaintiff's causes of action is founded on the plaintiff's allegation that during the former action, the defendant made false and defamatory statements about her to the court in a memorandum of law in support of a motion in limine[2] and in a hearing before the court on the same issue.

In response to the plaintiff's complaint, the defendant filed an answer and two special defenses in which he claimed that he was absolutely privileged to publish the allegedly defamatory statements. Thereafter, the defendant filed a motion for summary judgment. On March 25, 2002, the court granted the defendant's motion as to all counts of the plaintiff's complaint because it found that the defendant's statements were absolutely privileged. This appeal followed. Additional facts will be set forth as necessary.

---

[1] Although counts one and two of the pro se plaintiff's third amended complaint are labeled "libel and slander," the allegations contained in the first count actually state a cause of action in libel, while the allegations in the second count state a cause of action for slander.

[2] In the first count of the plaintiff's third amended complaint she alleged that "the defendant published untrue statements to the . . . Court . . . in the form and body of a Motion in Limine and Memorandum of Law in support thereof." After reviewing the motion in limine and the memorandum of law in support of the motion, it is apparent that the statements at issue were published in the memorandum of law in support of the motion in limine, but not in the motion itself.

We first set forth our standard of review. "The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

The plaintiff claims that the court improperly rendered summary judgment in favor of the defendant because it improperly determined that he had an absolute privilege to publish the allegedly defamatory statements at issue. Specifically, the plaintiff argues that the defendant was not entitled to an absolute privilege because the allegedly defamatory statements were not pertinent to a subject in controversy.[3] We disagree.

---

[3] The plaintiff also argues that in affording the defendant an absolute privilege, the court improperly failed to protect or to give consideration to her constitutionally protected right to privacy in her medical records. That argument is wholly without merit.

The short answer to the plaintiff's constitutional argument is that the constitutional right to privacy is not implicated in the present case. The constitutional right to privacy relates exclusively to the ability of the government to interfere with or to intrude on those areas that are protected. See *Whalen* v. *Roe*, 429 U.S. 589, 599 n.24, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977); *Eisenstadt* v. *Baird*, 405 U.S. 438, 453, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972) ("[i]f the right of privacy means anything, it is the right of the individual . . . to be free from *unwarranted governmental intrusion* into matters so fundamentally affecting a person as the decision whether to bear or beget a child" [emphasis added]). In the present case, the disclosures at issue were made by a private attorney, not a state actor, and, therefore, the constitutional right to privacy is not implicated.

We conclude that the court properly determined that the defendant was absolutely privileged to publish the allegedly defamatory statements at issue, and, thus, the court properly granted the defendant's motion for summary judgment as to the plaintiff's counts alleging libel, slander, invasion of privacy and intentional infliction of emotional distress.[4] Because the absolute privilege that protects attorneys from liability for defamation occurring in the course of a judicial proceeding does not provide the attorney with an absolute defense to liability for abuse of process; *Mozzochi* v. *Beck*, 204 Conn. 490, 494–95, 529 A.2d 171 (1987); we address the plaintiff's abuse of process claim separately.

I

## LIBEL, SLANDER, INVASION OF PRIVACY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

It is well settled that "communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986). The privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding.

---

[4] It is well settled that "[t]he effect of the absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986). Because the plaintiff's claims for invasion of privacy and intentional infliction of emotional distress are founded upon the same conduct as her libel and slander claims, the absolute privilege also bars recovery on those claims. See *Kelley* v. *Bonney*, 221 Conn. 549, 571–72 n.15, 606 A.2d 693 (1992); *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264–65, 597 A.2d 807 (1991) (absolutely privileged statements cannot be basis for action alleging intentional infliction of emotional distress); *Tucker* v. *Bitonti*, 34 Conn. Sup. 643, 647, 382 A.2d 841 (1977) (absolutely privileged statements cannot be made basis of claim for invasion of privacy, where claim relates solely to disclosure during judicial proceeding of facts pertinent to litigation).

Id., 251–52; see also 3 Restatement (Second), Torts § 586, comment (a), p. 247 (1977). Whether a communication is made upon an occasion of privilege is a question of law, and, therefore, our review is plenary. See 3 Restatement (Second), supra, § 619, p. 316; see also *McManus* v. *Sweeney*, 78 Conn. App. 327, 334, 827 A.2d 708 (2003).

In the present case, it is undisputed that the defendant published the allegedly defamatory statements in a memorandum of law in support of a motion in limine and in a formal hearing before the court on the same issue, and that, therefore, the statements were published in the course of a judicial proceeding. The plaintiff, nevertheless, argues that the defendant was not absolutely privileged because the allegedly defamatory statements at issue were not pertinent to a subject in controversy. We are not persuaded.

The judicial proceedings privilege is "available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it. Thus the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege. . . . On the other hand, the privilege does not cover the attorney's publication of defamatory matter that has no connection whatever with the litigation." 3 Restatement (Second), supra, § 586, comment (c), p. 248.

The following additional facts are necessary for our resolution of the plaintiff's claim. In the former action, the plaintiff had disclosed two expert medical witnesses, William H. Gerber, an obstetrician and gynecologist, and Carol Goldenthal, a cardiologist. Pursuant to Federal Rule of Civil Procedure 26 (a) (2), each expert submitted a report detailing, inter alia, the substance

of their opinions.[5] The defendant, seeking to preclude the plaintiffs' two experts from testifying, filed a motion in limine in which he claimed, inter alia, that the experts' proposed testimony was inherently unreliable and therefore inadmissible under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and rule 702 of the Federal Rules of Evidence. In arguing that the experts' testimony was inherently unreliable, the defendant published certain allegedly defamatory personal information obtained from the plaintiff's medical records.[6]

In the former action, the plaintiff had placed her emotional state and physical condition at issue by claiming that her employer negligently and intentionally had caused her emotional distress and that the stress caused her physical consequences. Additionally, by disclosing expert witnesses, the plaintiff placed the reliability and admissibility of their opinions at issue.[7] See Fed. R. Evid. 702. The allegedly defamatory publications were, at least in some way, pertinent to the subject of the reliability and, therefore, the admissibility of the experts' opinions because they disclosed information that the experts admittedly did not take into account in forming their opinions as to the source of the plaintiff's stress.

---

[5] According to the experts' reports, Gerber proposed to testify that work-related stress "may well have been" a causal factor in the plaintiff's miscarriage. Goldenthal proposed to testify that the plaintiff's "multiple complaints in 1992 and 1993 were of a subjective nature caused by anxiety and, at times, depression. The source of the anxiety was in [the plaintiff's] work situation."

[6] That information concerns the plaintiff's medical history, personal habits and relationships and need not be repeated here.

[7] Rule 702 of the Federal Rules of Evidence provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony. Fed. R. Evid. 702 advisory committee notes. Trial judges are charged with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. Id.

We conclude that the court properly determined that the defendant was entitled to an absolute privilege and, therefore, that the court properly granted the defendant's motion for summary judgment as to the plaintiff's claims of libel, slander, intentional infliction of emotional distress and invasion of privacy.

## II

## ABUSE OF PROCESS

Although the court apparently found that the plaintiff's claim for abuse of process was barred because the defendant had an absolute privilege to publish the allegedly defamatory statements that formed the basis of that claim, our Supreme Court has determined that absolute privilege does not bar a claim for abuse of process. *Mozzochi* v. *Beck*, supra, 204 Conn. 494–95. As we often have stated, however, "[w]e may affirm a trial court's decision that reaches the right result, albeit for the wrong reason." (Internal quotation marks omitted.) *Amsden* v. *Fischer*, 62 Conn. App. 323, 327, 771 A.2d 233 (2001).

Because the undisputed facts show that the defendant did not engage in an abuse of process, we conclude that the defendant was entitled to judgment as a matter of law and, therefore, that the court properly rendered summary judgment in favor of the defendant on the plaintiff's abuse of process claim.

"An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. *Varga* v. *Pareles*, [137 Conn. 663, 667, 81 A.2d 112 (1951)]; *Schaefer* v. *O. K. Tool Co.*, 110 Conn. 528, 532–33, 148 A. 330 (1930). Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682,

emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . . Comment b to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. " (Internal quotation marks omitted.) *Mozzochi* v. *Beck*, supra, 204 Conn. 494.

In *Mozzochi*, our Supreme Court "concluded that an attorney's duty not to pursue groundless litigation does not give rise to a third party action for abuse of process unless the third party can point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation. Id., 497." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 776, 802 A.2d 44 (2002).

In the present case, the only allegations of misconduct made against the defendant are that he obtained the plaintiff's medical records through extrajudicial (i.e., unlawful) means and that he improperly disclosed to the court information obtained from those records. Because the undisputed facts show that the defendant did not engage in an abuse of process with regard to either of those allegations, we conclude that summary judgment was properly rendered in favor of the defendant.

As we have stated, the plaintiff placed her emotional state and physical condition at issue in the former action by claiming that her employer negligently and intentionally had caused her emotional distress and that the stress caused her to have a miscarriage. The defendant, therefore, was entitled to use the discovery process to obtain the plaintiff's medical records. See Fed. R. Civ.

P. 26 (b) (1) (parties may obtain discovery regarding any matter not privileged if relevant to claim or defense of any party to action). The undisputed facts in evidence show that the medical records were, in fact, obtained through a valid method of discovery.[8] Thus, there was no misconduct and no abuse of process in the defendant's use of discovery procedures to gain access to the plaintiff's medical records.

As to the plaintiff's allegation that the defendant improperly published certain information obtained from her medical records, those publications were made in the context of a motion in limine. The motion in limine is a proper vehicle to contest the admissibility of the testimony of a plaintiff's expert witnesses. See *United States* v. *Paredes*, 176 F. Sup. 2d 192, 193 (S.D.N.Y. 2001) ("purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence"); see also *Luce* v. *United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). The motion in limine was not used against the plaintiff in an improper manner, nor was it used to accomplish a purpose for which it was not designed. Thus, there can be no abuse of process claim based on the defendant's filing of the motion in limine.

We conclude that the plaintiff's claims are without merit and that the court properly rendered summary judgment in favor of the defendant as to all counts of

---

[8] An affidavit, submitted on behalf of the defendant, indicates that the attorney who noticed the experts' depositions included a request that the experts produce a copy of their medical files regarding the plaintiff. That deposition notice was within the allowable parameters of rule 30 (b) (5) of the Federal Rules of Civil Procedure. See *Alexandru* v. *West Hartford Obstetrics & Gynecology, P.C.*, 78 Conn. App. 521, 525, 827 A.2d 776 (2003). In *Alexandru* v. *West Hartford Obstetrics & Gynecology, P.C.*, supra, 525, we determined that Gerber, the plaintiff's expert, had disclosed the plaintiff's medical records pursuant to applicable rules of court and that his disclosure did not violate General Statutes § 52-146o (a).

the plaintiff's complaint. The defendant did not engage in misconduct with regard to the plaintiff's allegations, but rather, represented his client in a thoroughly professional manner and in accordance with the highest standards of the legal profession.

The judgment is affirmed.

In this opinion the other judges concurred.