MICHAELA I. ALEXANDRU *v.* PATRICIA M. STRONG
(AC 23895)

Foti, Bishop and McLachlan, Js.

Argued October 14, 2003—officially released January 13, 2004

*Michaela I. Alexandru,* pro se, the appellant (plaintiff).

*James V. Somers,* with whom were *Regen O'Malley* and, on the brief, *Thomas J. Hagarty,* for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, Michaela I. Alexandru, appeals from the summary judgment rendered by the trial court on each of her five claims in favor of the defendant, Patricia M. Strong, the plaintiff's former attorney. We affirm the judgment of the trial court.

This action arises out of the defendant's legal representation of the plaintiff in a federal lawsuit against the

plaintiff's former employer, Northeast Utilities Service Company (Northeast Utilities), for the alleged sexually discriminatory and retaliatory treatment of the plaintiff by several of its employees. To establish the terms of their attorney-client relationship, the plaintiff and defendant entered into a retainer agreement, dated December 5, 1994, which provided, inter alia, that the defendant would represent the plaintiff in connection with "[c]laims arising from [her] employment with Northeast Utilities . . . ."

## I

## FEDERAL ACTION

In accordance with their attorney-client relationship, the defendant, on March 14, 1995, instituted an action in the United States District Court for the District of Connecticut against Northeast Utilities, asserting both federal claims under Title VII of the Civil Rights Act of 1964 (Title VII)[1] and the Americans with Disabilities Act of 1990 (ADA),[2] and pendent state law claims for breach of the implied covenant of good faith and fair dealing, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress and negligent supervision.

By motion dated May 9, 1997, the defendant sought to withdraw as plaintiff's counsel, citing a deterioration of the attorney-client relationship. The District Court denied that motion and admonished the plaintiff to cooperate with the defendant. On November 13, 1997, the defendant again filed a motion to withdraw as counsel due to an irreparable deterioration of the attorney-client relationship. In connection with the second motion to withdraw, the defendant filed supporting documentation to substantiate her assertions about the

---

[1] See 42 U.S.C. § 2000e et seq.

[2] See 42 U.S.C. § 12101 et seq.

declining relationship. The District Court subsequently granted the defendant's second motion to withdraw, stating that its decision was based on both the documentation filed by the defendant and the plaintiff's "representation to the court that she did not oppose the motion to withdraw and would be seeking new counsel."

That same day, the court granted Northeast Utilities' motion for partial summary judgment on the plaintiff's claims of negligent infliction of emotional distress, intentional infliction of emotional distress and negligent supervision.[3] In its ruling, the court determined that the plaintiff's negligent infliction of emotional distress and negligent supervision claims were time barred by General Statutes § 52-584[4] because they were filed more than two years after November 6, 1992, the date of the plaintiff's termination from Northeast Utilities.

The court further determined that even if the negligent infliction of emotional distress claim was not time barred, to the extent that the claim arose from events occurring during the plaintiff's employment with Northeast Utilities, the claim would also be barred by the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq.,[5] which, where

---

[3] During discovery, the District Court had granted partial summary judgment in favor of Northeast Utilities as to the ADA claim and a portion of the defamation claim.

[4] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

[5] That provision provides in relevant part that "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter . . . ." General Statutes (Rev. to 1991) § 31-284 (a), as amended by Public Acts 1991, No. 91-32, § 7.

Although the act was amended, effective July 1, 1993, to permit recovery

applicable, provides the sole means available to a plaintiff for recovery in common-law tort against an employer. See, e.g., *Jett* v. *Dunlap*, 179 Conn. 215, 217, 425 A.2d 1263 (1979). Similarly, the court determined that the exclusivity provision also barred the plaintiff's claim for intentional infliction of emotional distress.[6]

Following the court's order permitting the defendant to withdraw as counsel and its rendering of partial summary judgment in favor of Northeast Utilities, the plaintiff represented herself pro se until May 21, 1999, when the jury found in favor of Northeast Utilities on the two remaining Title VII claims. As no appeal was filed, the federal court judgment was final.

## II

### MALPRACTICE ACTION

On November 22, 1999, the plaintiff initiated this action in five counts against the defendant in connection with the defendant's representation of her in the federal action against Northeast Utilities. The plaintiff's amended complaint alleges (1) legal malpractice (count one) and (2) breach of contract (count two), both based on the defendant's failure to assert her negligent infliction of emotional distress claim in a timely manner, resulting in the District Court's rendering of summary

---

for emotional distress in common-law tort by excluding from the definition of "personal injury" a "mental or emotional impairment," all of the plaintiff's allegations involved conduct occurring prior to July 1, 1993, and, therefore, the act as it existed prior to the 1993 amendment is applicable to the plaintiff's claims.

[6] The court noted that the exclusivity provision would only have barred the plaintiff's allegations of emotional distress arising from events prior to her receipt of the November 6, 1992 termination letter from Northeast Utilities. As the plaintiff's federal complaint could be construed to allege tortious conduct occurring after her receipt of the termination letter and during the termination process itself, the exclusivity provision would not have barred the portions of the plaintiff's emotional distress claims that were predicated on those allegations.

judgment as to that claim in favor of Northeast Utilities. The latter three counts are predicated on the defendant's withdrawal as counsel and the supporting documentation filed by the defendant. They assert that (3) the defendant's withdrawal constituted a breach of the implied covenant of good faith and fair dealing inherent in the parties' retainer agreement, (4) the documentation accompanying the second motion to withdraw contained statements that constituted an intentional infliction of emotional distress, and (5) the second motion to withdraw itself contained false and defamatory statements about the plaintiff.

On April 26, 2001, the defendant filed a motion for summary judgment on all five counts. The court, after reargument, granted the motion as to all counts. As to the plaintiff's legal malpractice claim, the court granted the motion in favor of the defendant on two grounds. The court determined first that the claim was time barred by General Statutes § 52-577[7] because the alleged negligent act or omission had occurred more than three years prior to the filing of the present action.[8] The court also determined that the plaintiff was unable to prove the elements of a cause of action for legal malpractice, namely, causation and damages. The court recognized that to succeed on her legal malpractice claim, the plaintiff had to demonstrate that she would have succeeded on the underlying claim of negligent infliction of emo-

---

[7] General Statutes § 52-577 provides in relevant part that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[8] The court specifically determined that because the statute of limitations governing the plaintiff's negligent infliction of emotional distress claim against Northeast Utilities ran on February 5, 1995, that date constituted the date of the negligent act or omission, i.e., the defendant's alleged failure to assert the claim by that date, for purposes of calculating the statute of limitations period for the plaintiff's legal malpractice claim. Accordingly, the court determined that the plaintiff had until February 5, 1998, to assert her malpractice claim against the defendant. Because it was not asserted until November 5, 1998, it was untimely.

tional distress against Northeast Utilities had the defendant filed it timely. The court determined that the plaintiff was collaterally estopped from establishing that she would have succeeded on the emotional distress claim because the factual allegations underlying that claim were identical to those underlying the plaintiff's Title VII claims, which were litigated and resolved by the jury in favor of Northeast Utilities.

As to the plaintiff's breach of contract claim, the court determined that it was, in fact, a negligence claim couched in the language of contract and, thus, also was barred by the statute of limitations that precluded the plaintiff's legal malpractice claim. The court granted the motion for summary judgment on the plaintiff's claim of breach of the implied covenant of good faith and fair dealing because the plaintiff failed to offer any evidence that the defendant had acted in bad faith when she withdrew as counsel. As to the plaintiff's claims of intentional infliction of emotional distress and defamation, the court found that the comments at issue had been made to a judge in the context of a judicial proceeding and were therefore absolutely privileged. The appeal followed.

On appeal, the plaintiff asserts six claims. The first two pertain to the court's granting of the motion for summary judgment in favor of the defendant on her legal malpractice claim, and the final four claims challenge the granting of the motion for summary judgment on her remaining four claims against the defendant.[9] We affirm the judgment of the trial court.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well estab-

[9] The plaintiff asserts a seventh claim on appeal, namely, that the court improperly concluded that the exclusivity provision of the act barred her negligent infliction of emotional distress claim against Northeast Utilities. As the court did not grant the motion for summary judgment on that ground and, in fact, explicitly rejected it, we do not address it.

lished. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Alexandru* v. *Dowd*, 79 Conn. App. 434, 437, 830 A.2d 352, cert. denied, 266 Conn. 925, 835 A.2d 471 (2003).

## III

## LEGAL MALPRACTICE

The plaintiff claims that the court improperly granted the motion for summary judgment on her legal malpractice claim because (1) the applicable statute of limitations was tolled by the continuing course of conduct rule and (2) the doctrine of collateral estoppel did not preclude her from establishing that she would have succeeded on her underlying claim for negligent infliction of emotional distress. Although it appears that the plaintiff may be correct that the court did not conduct a proper analysis of the statute of limitations issue, she cannot prevail on her claim because we determine that the court was correct with respect to the issue of collateral estoppel.[10]

To recover on a legal malpractice claim, the plaintiff must establish: "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. . . . To prove

---

[10] It is still not clear that the plaintiff would prevail on the statute of limitations argument in any event. Although the law had been unsettled when the court rejected the plaintiff's argument that the continuing course of conduct doctrine tolled the statute of limitations, it has since been clarified. According to the continuous representation doctrine, adopted by our Supreme Court in *DeLeo* v. *Nusbaum*, 263 Conn. 588, 821 A.2d 744 (2003), the statute of limitations period for a legal malpractice action may be tolled until the termination of the attorney-client relationship if the plaintiff can show (1) that the defendant continued to represent the plaintiff with regard to the same underlying matter and (2) either that the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate harm allegedly caused by that malpractice during the continued representation period. Id., 597. On the basis of the record before us, it is doubtful that the plaintiff could satisfy the second prong of that test.

causation and damages . . . the plaintiff must establish that the defendant['s] failure to file an action . . . within the statute of limitations period caused [the plaintiff] harm because [the plaintiff's action] is now time barred." (Citation omitted.) *Mayer* v. *Biafore, Florek & O'Neill,* 245 Conn. 88, 92, 713 A.2d 1267 (1998). "An issue of causation . . . is whether the [claim] could have been pursued." 4 R. Mallen & J. Smith, Legal Malpractice (5th Ed. 2000) § 30-17, p. 495. "If the underlying [claim] was never tried, the client essentially has a double burden of proof. First, the client must show that the attorney was negligent. Second, the client must establish that the underlying claim was recoverable and collectible." Id. In other words, to succeed on her claim of malpractice for the defendant's alleged failure to assert her emotional distress claim against Northeast Utilities in a timely manner, the plaintiff must establish that she would have been successful in pursuing that claim but for the defendant's omission.

The court correctly concluded that the plaintiff was collaterally estopped from establishing that she would have been successful in pursuing her emotional distress claim. "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action.* It also must have been actually decided and the decision must have been necessary to the judgment." (Emphasis in original; internal quotation marks omitted.) *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals,* 257 Conn. 456, 466, 778 A.2d 61 (2001). "Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Internal quotation

marks omitted.) *Pitchell* v. *Williams*, 55 Conn. App. 571, 578, 739 A.2d 726 (1999), cert. denied, 252 Conn. 925, 746 A.2d 789 (2000).

Following the District Court's granting of the motion for partial summary judgment in favor of Northeast Utilities, the plaintiff proceeded, pro se, on her two remaining Title VII claims. Those claims, the plaintiff's allegations of sexual harassment and retaliatory conduct by employees of Northeast Utilities, were predicated on the same facts as was the emotional distress claim.[11] On May 21, 1999, the jury found in favor of Northeast Utilities on both Title VII claims. By special verdict, the jury determined that the plaintiff had failed to prove, by a preponderance of the evidence, that her supervisors sexually harassed her or subjected her to abusive, intimidating treatment. It is not disputed that those factual issues were fully and fairly litigated in the federal action and that the jury's determination of those issues was necessary to its verdict in favor of Northeast Utilities. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 257 Conn. 466.

Thus, to assert a viable malpractice claim in this case, the plaintiff must demonstrate that she would have been successful in proving the factual allegations that her supervisors sexually discriminated and retaliated against her, and that such conduct caused her emotional distress. See 4 R. Mallen & J. Smith, Legal Malpractice, supra, p. 495. The factual issue of whether such conduct ever occurred, however, already has been litigated and decided against her in the context of the Title VII claims. The collateral estoppel doctrine bars her from relitigating those factual issues.

---

[11] Both the Title VII claims and the emotional distress claim incorporated by reference paragraphs one through forty-four of the federal complaint, which set forth the factual allegations common to all of the plaintiff's claims against Northeast Utilities.

Accordingly, we agree with the court that the plaintiff is unable to maintain a cause of action for legal malpractice stemming from the defendant's failure to assert her emotional distress claim in a timely manner.

## IV

## BREACH OF CONTRACT

The plaintiff next claims that the court improperly characterized her breach of contract claim as a mere restatement of her legal malpractice claim and therefore improperly determined that the claim was barred by the negligence statute of limitations. Although we agree with the court's granting of the motion for summary judgment as to that claim, we do so for a different reason and, accordingly, affirm the judgment on an alternate ground.

In her amended complaint, the plaintiff alleged that in failing to file her negligent infliction of emotional distress claim against Northeast Utilities within the two year statute of limitations period, the defendant breached the terms of the parties' retainer agreement.[12] The factual allegations giving rise to the claim for breach of contract essentially mirror those outlined in the malpractice claim, to wit, that the defendant agreed to advance the plaintiff's claims against Northeast Utilities in federal District Court, but failed to assert the negligent infliction of emotional distress claim in a timely manner, resulting in the District Court's granting of the motion for summary judgment as to that claim in favor of Northeast Utilities. The court found that while purporting to allege a contract cause of action, the claim essentially alleged a breach of the standard of professional care and was, therefore, more appropriately characterized as a legal malpractice claim. The

---

[12] As stated previously, the retainer agreement provided that the plaintiff retained the defendant to represent her in connection with "[c]laims arising from [her] employment with Northeast Utilities . . . ."

court further concluded that, as a malpractice claim, the count was time barred by the three year statute of limitations set forth in § 52-577.

We agree with the court's interpretations of the claim as a negligence claim couched in contractual language. Our analysis is guided by our recent decision in *Caffery* v. *Stillman*, 79 Conn. App. 192, 829 A.2d 881 (2003). In that case, the plaintiff brought an action against his former attorney for legal malpractice and breach of contract, on the basis of alleged deficient representation in a workers' compensation matter. Id., 194. The trial court rendered summary judgment in favor of the defendant on both counts. Id., 195. In affirming the court's judgment as to the breach of contract claim, we considered the issue of what construction to put on a pleading that purports to sound in contract yet contains allegations rooted in negligence. We stated that although "one may bring against an attorney an action sounding in both negligence and contract . . . one [cannot] bring an action in both negligence and contract merely by couching a claim that one has breached a standard of care in the language of contract." (Citations omitted.) Id., 197.

Even when we accord due regard to the well established policy of the Connecticut courts to be solicitous of pro se litigants and to construe the rules of practice liberally in favor of such parties; see *Hill* v. *Williams*, 74 Conn. App. 654, 656, 813 A.2d 130, cert. denied, 263 Conn. 918, 822 A.2d 242 (2003); we agree with the court that the pleading at issue was no more than a negligence claim cloaked in contractual language. Notwithstanding that embedded in the language of the plaintiff's claim are the contractual rudiments of promise and breach, "[w]here the plaintiff alleges that the defendant negligently performed legal services and failed to use due diligence the complaint sounds in negligence, even though he also alleges that he retained him or engaged

his services." *Shuster* v. *Buckley*, 5 Conn. App. 473, 478, 500 A.2d 240 (1985).

Although we agree with the court's characterization of the plaintiff's second count as a restatement of her legal malpractice claim, we do not agree with the court's subsequent determination to grant the motion for summary judgment in favor of the defendant on that claim on the ground that it necessarily was barred by the negligence statute of limitations.[13] See *DeLeo* v. *Nusbaum*, 263 Conn. 588, 821 A.2d 744 (2003). We instead affirm the judgment on the ground that, as a restatement of her legal malpractice claim, the second count similarly was barred by the doctrine of collateral estoppel, which matter was treated in full in part III.

V

IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The plaintiff also claims that the court improperly granted the motion for summary judgment in favor of Northeast Utilities on her claim for breach of the implied covenant of good faith and fair dealing. Specifically, the plaintiff asserts that the defendant's withdrawal as counsel in the underlying action against Northeast Utilities amounted to a breach of the implied covenant of good faith and fair dealing inherent in the parties' retainer agreement.

"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 564, 733 A.2d 197 (1999). To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to

---

[13] See footnote 10.

receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. See, e.g., *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 598, 687 A.2d 111 (1996). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal quotation marks omitted.) *Habetz* v. *Condon*, 224 Conn. 231, 237–38, 618 A.2d 501 (1992). Absent allegations and evidence of a dishonest purpose or sinister motive, a claim for breach of the implied covenant of good faith and fair dealing is legally insufficient. See, e.g., *Feinberg* v. *Berglewicz*, 32 Conn. App. 857, 862, 632 A.2d 709 (1993).

The court determined that the plaintiff failed to offer any evidence that the defendant had acted in bad faith when she withdrew from representing the plaintiff. We agree.

The record is devoid of any evidence capable of supporting the conclusion that the defendant acted with a sinister motive or a dishonest purpose when she withdrew as the plaintiff's counsel. The record discloses that the defendant substantiated her motion to withdraw through the serious concerns she had that she would be unable to represent the plaintiff adequately, thereby indicating a prudent exercise of her rights and obligations under the rules of professional responsibility. See *Matza* v. *Matza*, 226 Conn. 166, 176–77, 627 A.2d 414 (1993). Furthermore, the defendant's withdrawal was undertaken with the permission of the District Court and in accordance with the relevant court rules and

procedures.[14] Also, because the plaintiff represented to the court that she did not oppose the withdrawal and would be seeking new counsel, it is disingenuous for her to now seek reprieve from the act to which she expressly had acquiesced.[15] There is no basis to conclude that the defendant's withdrawal was an act motivated by a sinister intention to mislead or to deceive the plaintiff, and we accordingly conclude that the court properly granted the motion for summary judgment in favor of the defendant on the plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

## VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND DEFAMATION

The plaintiff last claims that the court improperly granted the motion for summary judgment in favor of the defendant on her claims of intentional infliction of emotional distress and defamation. Those claims were predicated on comments made by the defendant in both

[14] See rule 15 of the Local Rules of Civil Procedure for the United States District Court for the District of Connecticut, which provides in relevant part that counsel may withdraw "only by leave of Court on motion duly noticed, and [motions] shall not be granted except upon a showing that other counsel has appeared or that the party has elected to proceed pro se, and that the party whose counsel seeks to withdraw has received actual notice . . . ."

[15] Courts in other jurisdictions similarly have rejected claims against attorneys who have withdrawn as counsel with the permission of the court. See, e.g., *Washington* v. *Rucker*, 202 Ga. App. 888, 415 S.E.2d 919 (1992) (finding plaintiff's malpractice claim against former attorney for withdrawing as counsel in compliance with applicable rules was not justiciable claim); *Prestage* v. *Clark*, 723 So. 2d 1086 (La. App. 1998) (attorney not negligent when client knew counsel had sought to withdraw from representation and client had been fully advised of probable consequences of not obtaining professional help), cert. denied, 739 So. 2d 800 (La. 1999); *Wood* v. *Parker*, 901 S.W.2d 374 (Tenn. App. 1995) (affirming granting of motion for summary judgment on malpractice claim predicated on attorney's withdrawal as counsel where attorney complied with all ethical considerations and disciplinary rules).

her second motion to withdraw and in the supporting documentation. The court granted the motion for summary judgment as to those claims on the ground that the defendant's representations to the District Court about the plaintiff were absolutely privileged and could not give rise to liability for either emotional distress or defamation. We agree.

"It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding." (Citation omitted; internal quotation marks omitted.) *Alexandru* v. *Dowd*, supra, 79 Conn. App. 438; see also *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 251–52, 510 A.2d 1337 (1986); 3 Restatement (Second), Torts § 586, comment (a), p. 247 (1977). That absolute privilege applies regardless of whether the representations at issue could be characterized as false, extreme or outrageous. See *Petyan* v. *Ellis*, supra, 253.

Here, it is undisputed that the comments uttered and statements published by the defendant were articulated for the purpose of explaining the deteriorating attorney-client relationship and her reasons for wanting to withdraw. As those representations were essential to and published in the course of a judicial proceeding, they are protected by an absolute privilege. See *Alexandru* v. *Dowd*, supra, 79 Conn. App. 438.

We also note that the defendant was circumspect in her dissemination of unflattering statements about the plaintiff. The record reflects that the defendant submitted her motion to withdraw in camera to the District Court judge, and that copies of the motion and supporting documentation were provided only to the District Court and the plaintiff, thus ensuring that the state-

ments were made known to as narrow an audience as possible.

In reaching our conclusion, we also are mindful of the strong public policy that underlies the absolute privilege. Our Supreme Court has emphasized the importance of cultivating a judicial process that encourages participants in legal proceedings to speak freely and without fear that they might later be subjected to judicial scrutiny or tort liability. See, e.g., *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991).

We accordingly conclude that the court correctly determined that the defendant's representations were protected by an absolute privilege and, therefore, properly granted the defendant's motion for summary judgment as to the plaintiff's claims for intentional infliction of emotional distress and defamation.

The judgment is affirmed.

In this opinion the other judges concurred.

