JOHN VIOLA ET AL. v. FREDERICK O'DELL
(AC 28612)

DiPentima, Harper and Berdon, Js.

Argued March 18—officially released July 1, 2008

*Paul A. Catalano*, for the appellants (plaintiffs).

*Deborah Etlinger*, with whom, on the brief, was *Susan E. Evans*, for the appellee (defendant).

### Opinion

HARPER, J. In this legal malpractice action, the plaintiffs, John Viola and Viola Realty, LLC, appeal from the summary judgment rendered by the trial court in favor of the defendant, Frederick O'Dell. The plaintiffs claim that the court improperly (1) concluded that they had failed to demonstrate that they could have succeeded on the merits of their underlying zoning appeal had the

defendant filed an appellate brief in a timely manner and (2) failed to consider certain allegedly dispositive evidence.[1] We affirm the judgment of the trial court.

The following undisputed facts gave rise to the plaintiffs' appeal. On October 23, 2001, a Cromwell zoning enforcement officer ordered the plaintiffs to "[c]ease and [d]esist the landscaping business from 310 Main Street. The landscaping business [is] not permitted in the downtown business zone." The plaintiffs retained the defendant to represent them with respect to their challenge of the order. The plaintiffs appealed from the order to the zoning board of appeals of the town of Cromwell (board). The board held a public hearing on the matter on March 5, 2002.

At that hearing Viola, the owner and operator of Viola Realty, LLC, testified as to the nature of the plaintiffs' business. He testified that the business conducts both retail and landscaping activities. The retail portion involves the sale of mulch, stone, wood ties, sand, ice, ice melt, gravel and bushes. No retail sales occur on-site, however. Customers thus do not walk in to browse products or place orders; rather, they place orders over the telephone. Generally, ordered items are then picked up by the plaintiffs from a third party wholesaler and delivered directly to the customer. Inventory items, however, are "sometimes" stored on trucks on-site. The landscaping portion of the business involves services conducted entirely off-site. The landscaping equipment, including trucks, mowers and other similar machinery, is stored on-site.

After the hearing, the board notified the plaintiffs, via letter, that "at its regular meeting of April 2, 2002,

---

[1] The plaintiffs also raised an equal protection claim at oral argument. This argument was not briefed, however, and we therefore decline to afford it review. See *Bernhard-Thomas Building Systems, LLC* v. *Dunican,* 100 Conn. App. 63, 78 n.12, 918 A.2d 889 (2007), aff'd, 286 Conn. 548, 944 A.2d 329 (2008).

[it] voted to deny [their] appeal of the [z]oning [e]nforcement [o]fficer's [c]ease and [d]esist [o]rder . . . ." The board's notice did not delineate any reasons for the board's decision to deny the appeal. The plaintiffs filed in the Superior Court an appeal from the board's decision. The defendant, however, failed to file a timely appellate brief with the Superior Court, and the plaintiffs' appeal was dismissed on this ground.

The plaintiffs thereafter filed this legal malpractice action against the defendant. The parties filed cross motions for summary judgment. After hearing oral argument, the court granted the defendant's motion and denied the plaintiffs' motion, reasoning that there was no genuine issue that the defendant's negligence had not caused any harm to the plaintiffs. This appeal followed.

I

The plaintiffs first claim that the court improperly concluded that no genuine issue existed as to whether the defendant's negligence had caused the plaintiffs any harm. In furtherance of this claim, they argue that the court improperly determined that they could not have prevailed in their underlying zoning appeal had the defendant filed a timely appellate brief. We disagree.

Before we address the merits of the plaintiffs' claim, we must first discuss the standard of review and legal principles that will guide our analysis.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the

absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the [defendant's] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Bagoly* v. *Riccio*, 102 Conn. App. 792, 796–97, 927 A.2d 950, cert. denied, 284 Conn. 931, 934 A.2d 245, 246 (2007). In turn, "the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 92, 713 A.2d 1267 (1998).

The only element at issue on appeal is that of causation.[2] "An issue of causation [in a legal malpractice action] is whether the [claim] could have been pursued. . . . If the underlying [claim] was never tried, the client essentially has a double burden of proof. First, the client must show that the attorney was negligent. Second, the client must establish that the underlying claim was recoverable and collectible." (Citation omitted; internal quotation marks omitted.) *Alexandru* v. *Strong*, 81 Conn. App. 68, 76, 837 A.2d 875, cert. denied, 268 Conn. 906, 845 A.2d 406 (2004). Therefore, for the plaintiffs to demonstrate that the court improperly concluded that no genuine issue existed as to the element of causation, they must persuade us that the court improperly determined that they could not have prevailed in their underlying appeal from the board's decision that their business was engaged in a nonpermitted use.

To have prevailed in that appeal, the plaintiffs would have needed to demonstrate that there was not "substantial evidence in the record to support the [board's]

---

[2] The parties have not contested the court's findings that the plaintiffs and the defendant entered into an attorney-client relationship and that the defendant's failure to file a timely brief in the underlying matter amounted to negligent conduct.

determination. . . . The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Citation omitted; internal quotation marks omitted.) *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 452, 908 A.2d 1049 (2006).

We begin our analysis by looking to the zoning regulations in effect at the time of the board's determination. Section 2.1 of the Cromwell zoning regulations divides the town into several use districts. The plaintiffs' business falls within the "downtown business" district. Section 4.2 contains a use regulation table (table), which lists 133 uses and indicates in which use district each listed use is permitted.[3] "Landscaping," the use that the cease and desist order had sought to prevent, is not among the 133 uses listed in the table. Section 4.1, however, provides in relevant part that "[t]he uses enumerated [in the table] are not exhaustive nor are they meant to cover all possible uses, thus acting as a restrictive table to prevent the development of the non-listed activities. They are to establish a pattern of development for the various use districts thus providing for a homogenous composition of the district." Thus, the regulations clearly indicate that the uses listed in the table are not exhaustive.

Cognizant of these regulation sections, the court concluded that substantial evidence existed for the commission to have determined that the plaintiffs' business

[3] For example, the table indicates that the first listed use, "Agency; Real Estate, Insurance" is permitted in the planned office, industrial park, business, industrial, downtown business and waterfront mixed districts but not permitted in the residential and planned residential development districts.

was most similar to two listed uses, greenhouses and nurseries, and because each of those uses was prohibited in the downtown business area, that landscaping would most likely be prohibited as well. Specifically, the court reasoned that the board may have considered evidence that "the plaintiffs' business [like greenhouses and nurseries] may have landscaping merchandise, such as plants or mulch, loaded in trucks found on the premises." We agree with the court.

Furthermore, § 5.6 explains that the purpose of the downtown business district is to "encourage high density, pedestrian-oriented commercial development of a type consistent with the historic character of the area." Viola testified that "no one walks in" to the plaintiffs' business and that sales are made exclusively via telephone. Clearly, substantial evidence thus existed to support the conclusion that the plaintiffs' business is inconsistent with the purpose of the downtown business district.

For these two reasons, it is clear to us that as a matter of law,[4] substantial evidence appears in the record to support the board's determination that the plaintiffs' business was engaged in a nonpermitted use. Therefore, we cannot say that the court improperly determined that the plaintiffs could not have succeeded in their underlying zoning appeal, and, a fortiori, we cannot say that the court improperly concluded that no genuine issue existed as to the element of causation. See *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 92; *Alexandru* v. *Strong*, supra, 81 Conn. App. 76.

The plaintiffs nevertheless argue that their business operated so much like a corporate office, which is a

[4] The question of whether substantial evidence exists is a purely legal inquiry. See *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 106–107, 890 A.2d 104 (2006); *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 70, 848 A.2d 395 (2004).

permitted use in the downtown business district, that it was improper for the board to conclude that their business was engaged in a nonpermitted use.[5] The plaintiffs support this argument by indicating that "[w]here more than one interpretation of language is permissible, restrictions upon the use of lands are not to be extended by implication . . . [and] doubtful language will be construed against rather than in favor of a [restriction] . . . ." (Internal quotation marks omitted.) *Farrior* v. *Zoning Board of Appeals*, 70 Conn. App. 86, 90, 796 A.2d 1262 (2002); *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals*, 17 Conn. App. 53, 66, 549 A.2d 1076 (1988).

Although this may be so, the objective in reviewing a decision of a zoning board of appeals is not to reassess the matter ab initio. See *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 452 ("reviewing court may not substitute its own judgment for that of the [board]"). A reviewing court rather must determine "whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) Id.; see also *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 612, 893 A.2d 431 (2006) ("possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence" [internal quotation marks omitted]). As we have already stated, substantial evidence existed, as a matter of law, to support the board's decision. Accordingly, the plaintiffs have failed to demonstrate that a genuine issue exists as to whether the negligence of the defendant caused them any harm.

[5] At oral argument before this court the plaintiffs further argued that their business operated like a bus depot, which also is a permitted use. The plaintiffs have failed to brief this argument, however, and we therefore decline to afford it review. See *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 100 Conn. App. 63, 78 n.12, 918 A.2d 889 (2007), aff'd, 286 Conn. 548, 944 A.2d 329, (2008).

## II

The plaintiffs also claim that the court improperly failed to consider certain allegedly dispositive evidence. The plaintiffs argue that subsequent to the filing of their legal malpractice claim, they reached a settlement with the town of Cromwell under which they would be allowed to continue operating their business in the exact same manner, provided they raze and reconstruct the building within which the business operates. They contend that the court inexplicably and improperly failed to consider this fact in rendering summary judgment. Although we have doubts as to the merits of the plaintiffs' claim, we dispose of the claim on the ground that the only confirmation of this settlement presented to the trial court was an unsigned and unsworn affidavit. As such, an affidavit is of no evidentiary value. See, e.g., *Fogarty* v. *Rashaw*, 193 Conn. 442, 444, 476 A.2d 582 (1984). There was simply no evidence before the court to substantiate the plaintiffs' claim.

The judgment is affirmed.

In this opinion the other judges concurred.