**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**Robert PRIGA, et al., Defendants.**

**Civ. No. N–88–246 (WWE).**

United States District Court, D. Connecticut.

June 22, 1992.

David A. Kulle, Daniel F. Sullivan, John E. Tener, Robinson & Cole, Hartford, CT, for plaintiff.

George H. Romania, Law Office of Robert Perrotti, Hamden, CT, Peter A. Treffers, New Haven, CT, for defendants.

## MEMORANDUM OF DECISION

EGINTON, District Judge.

## BACKGROUND

This action involves a dispute over the rights and obligations of the respective parties under a contract of insurance issued by plaintiff, Allstate Insurance Company ["Allstate"] in 1987 to defendant Robert Priga. The insurance policy covered a residence owned by Priga in New Haven and the contents of that residence. Some months after the policy was issued, the insured residence and the contents therein suffered damage resulting from a fire. Priga secured the services of an insurance adjuster to assist in the preparation of his claim under the policy, and subsequently sold the property in question to defendant A.A. McNamara & Sons, Inc., a corporation specializing in the reconstruction of fire-damaged buildings. Priga assigned the claim for the dwelling fire loss to defendant Arthur McNamara.

Allstate's complaint alleges that defendant Priga made material misrepresentations concerning both Priga's true residency at the time of the fire and the value of certain items Priga claimed were destroyed in the fire. Allstate argues that such misrepresentations void the underlying insurance contract and terminate all of its obligations thereunder.

Defendants counter that Priga made no material misrepresentations to Allstate concerning either his residency or the contents of the property. Both defendants assert a counterclaim. Defendant Priga alleges that Allstate is in breach of contract under the policy in that insured contents of the New Haven property were destroyed and Allstate has failed to pay the loss and damage in accordance with the terms of the policy. Defendant McNamara alleges that Allstate is in breach of contract in that the insured New Haven property was damaged by the fire and Allstate has failed to pay the loss and damage on the claim assigned by Priga in accordance with the terms of the policy.

This case was tried to the court for four days, on October 3, 7, 8, and 11, 1991, and is ready for decision. The court finds in plaintiff's favor, and pursuant to Fed. R.Civ.P. 52(a), the court enters its Findings of Fact and Conclusions of Law as follows.

## FINDINGS OF FACT

At the commencement of this action, plaintiff was an Illinois corporation with its principal place of business in Northbrook, Illinois.

At the commencement of this action, defendants Robert Priga ["Priga"] and Arthur McNamara ["McNamara"] were citizens of the State of Connecticut.

At the commencement of this action, defendant A.A. McNamara & Sons, Inc. ["McNamara Inc."] was a Connecticut Corporation with its principal place of business in Hamden, Connecticut.

On April 10, 1987, Priga entered into a contract of property insurance [the "policy"] with Allstate whereby Allstate agreed to insure Priga against certain risks of direct physical loss or damages to a property and its contents owned by Priga, located at 159 Fillmore Street in New Haven, Connecticut [the "property"]. The limit of the policy was $105,400 for both building and contents. The term of the policy was one year, beginning April 10, 1987.

The policy was titled a "Deluxe Homeowners policy," and afforded the Insured coverage up to the replacement value of the property and its contents. Replacement value coverage provides greater protection than cash value coverage, the latter taking into consideration the depreciation of the insured property.

A condition of the policy, common to all replacement value policies, was that Priga maintain his residence at the insured property. It is Allstate's custom to issue replacement value policies to cover buildings only where the building is the residence of the policyholder.

The policy provided that it would be void in the event of any intentional concealment or misrepresentation by Priga of any fact or circumstance material to his claim, before or after the loss.

On the early morning of September 4, 1987, the property suffered fire damage. Two rooms on the first floor, the kitchen and a rear bedroom, were extensively damaged. Two other rooms on the first floor, a side bedroom and the living room, suffered moderate damage due to smoke and water. The remaining floors of the property suffered minimal damage. In the course of fighting the fire, the fire department removed damaged and destroyed contents and other rubble from the first floor and deposited it around the property.

On September 22, 1987, while Allstate employee James McKenna was examining the property with an insurance adjuster, Priga delivered a signed statement to McKenna which related that Priga had lived almost exclusively at the property for fifteen years prior to the fire.

Assisted by the insurance adjuster, Priga compiled a list of items which were the contents of the property destroyed in the fire. This list contained, among other things, the following items: two air conditioning units; a color television; a stereo; a microwave oven; a video cassette recorder; wall-to-wall carpeting; a clothes dryer; some seventy audio cassette tapes; and various items all claimed to be the property of Priga's daughter, Tina, including approximately seventy pairs of pants, seventeen leather jackets, twenty handbags, and twenty pairs of athletic sneakers.

Within days of the fire, Priga hired defendant McNamara Inc. to make repairs on the property. The rubble from the fire which had been deposited around the property by the fire department was subsequently removed and discarded by an independent contractor under the direction of McNamara Inc..

On September 21, 1987 Priga sold the property to McNamara Inc., and assigned to defendant McNamara the claim for the dwelling fire loss.

On October 2, 1987 Priga notified Allstate of the assignment, and authorized Allstate make payment to McNamara Inc. on the dwelling fire loss claim arising from the damaged property.

On December 15, 1987 Priga submitted to Allstate a Proof of Loss, which contained the items included on the property contents list compiled with the insurance adjuster.

Of the items claimed in Priga's Proof of Loss none was recovered on or near the property in usable or damaged condition in the wake of the fire.

On January 12, 1988, Allstate employees conducted an examination under oath of Priga in which he repeated the assertions made earlier in his signed statement of September 22, 1987 that he had been living at the property in the months prior to the fire.

At trial, Priga testified that the statements made in his signed statement of September 22, 1987 and his examination under oath of January 12, 1988 were false, and that in the six months prior to the fire he had lived almost exclusively at his sister's home while recovering from a stroke.

In a letter dated March 14, 1988 Allstate notified Priga that it considered the policy void and it would decline to pay the claims arising from the property or contents loss. The letter stated that Priga had misrepresented various material facts to Allstate during the claim investigation, including the contents of the property destroyed in the fire and Priga's residence at the time of the fire.

## CONCLUSIONS OF LAW

Plaintiff filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201.

This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and § 1332(c). As previously set forth, plaintiff and all defendants are citizens of different states and the amount in controversy exceeds the requisite amount of $10,000.

A federal court sitting in diversity must apply the law of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The Connecticut Supreme Court recently held that in an action to recover on a fire insurance policy, an insurer must "prove its special defense of concealment or misrepresentation by a preponderance of the evidence" rather than by the higher "clear and convincing" evidentiary standard required for fraud cases. *Rego v.*

*Connecticut Insurance Placement Facility,* 219 Conn. 339, 343, 593 A.2d 491 (1991). In the instant case, the proper standard of proof for plaintiff's allegations of misrepresentation in both its declaratory judgment action and its defense of defendants' counterclaims is by a preponderance of the evidence.

### The Claims Involving Defendant Priga

The policy issued by Allstate to Priga contained the following provision:

**Concealment and Fraud**

This policy is void if any **insured person** intentionally conceals or misrepresents any material facts or circumstances, before or after loss.

This language parallels that found in the standard form of fire insurance policy of the State of Connecticut, and the insured's violation of the provision renders the policy void. *See* Conn.Gen.Stat. § 38–98 (1990).

Allstate must prove that any misrepresentations by Priga were material. The Second Circuit has held that when an insured makes a claim:

False sworn [statements] are material if they might have affected the attitude and action of the insurer. They are equally material if they may said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate.

*Fine v. Bellafonte Underwriter's Ins. Co.,* 725 F.2d 179, 184 (2d Cir.1984). This court has recently held that a loss claim which is "grossly exaggerated and false" constitutes "a fraudulent, intentional and material misrepresentation which void[s] the policy." *G & M Auto Supply, Inc. v. American Fid. Ins. Co.,* No. B–82–217, at 5 (RCZ) (D.Conn. Oct. 11, 1990).

Allstate has asserted two claims of misrepresentation, regarding Priga's residence and the contents of the property.

On the basis of the evidence, this court can only speculate as to Priga's true residence at the time of the fire. The parties agreed at trial that the key to the residence issue was Priga's intent. Allstate acknowl-

edged at trial that the policy provides that a holder of replacement value insurance may be away from the insured home for extended periods of time so long as the policyholder continues to regard the insured property as his residence. Priga likewise acknowledged that he spent only one or two nights at the property in the six months before the fire while he recuperated at his sister's home from a stroke. Priga's conduct during the pertinent period leaves the court unable to divine Priga's intent.

However, in a signed statement and during an examination under oath with representatives of Allstate present, Priga stated he had lived almost exclusively at the property prior to the fire. On cross examination at trial, Priga testified he had in fact lived with his sister, admitted he had made false statements in his earlier statement and examination, and stated he made the false statements because he believed it would facilitate his claim against Allstate.

Based on the Second Circuit standard, the statements made in the signed statement and during the examination under oath were material misrepresentations, having "been calculated either to discourage, mislead or deflect the [insurer]'s investigation in any area that might seem to the [insurer] a relevant or productive area to investigate." *Fine v. Bellafonte Underwriter's Ins. Co.*, 725 F.2d 179, 184 (2d Cir.1984). The residence of Priga was a relevant factor to Allstate because it was a condition to the Deluxe Homeowners policy which provided replacement value.

On the basis of Priga's testimony on cross examination, the court finds that Allstate has proven by a preponderance of the evidence that Priga made material misrepresentations to Allstate, both by signed statement and in the examination under oath, regarding his residency prior to the fire. Under the terms of the policy, such misrepresentation to Allstate during the investigation of Priga's claim renders the policy null and void.

■ As to the issue of items located at the property, the court finds that Allstate has proven by a preponderance of the evi-dence that many, if not all, of the items claimed in Priga's Proof of Loss and listed above in the Findings of Fact [*supra*, p. 375] were not on the property at the time of the fire.

The resolution of this issue turns on the credibility of the witnesses at trial. Several witnesses testified for Allstate and the defendants regarding the contents of the property after the fire. The court finds this testimony to be of limited value, because there was evidence at trial that the property was unprotected after the fire and debris was carried away from the property both with and without Priga's permission.

The court finds the testimony of the witnesses who testified as to the contents of the property before the fire to be more valuable. Priga and his daughter, Tina, testified at trial that the Proof of Loss accurately reflects the contents of the property before the fire. The testimony of both Priga and Tina must be examined in light of their interest in this case. Defendants offered no disinterested witnesses to testify as to the accuracy of the Proof of Loss.

Two disinterested witnesses testified on Allstate's behalf as to the contents of the property. Joseph Strain and Majidah Mateen both testified that the Proof of Loss submitted by Priga included many electronic items that were not on the property before the fire, such as a microwave oven, a dryer, a television, and a stereo, and exaggerated the amount of Tina's clothing and personal effects.

Both Strain and Mateen are biased against Tina. Strain was Tina's boyfriend the summer before the fire, and admitted that they parted in September, 1987 on bad terms. Strain also admitted he is a repeated felon and a drug addict. Yet he did live at the property for a period shortly before the fire. Mateen is a more reliable witness, although she admitted that she and Tina were once friends who fought often and are now on bad terms. Mateen lived at the property for the two weeks directly before the fire. Some four months after the fire Mateen gave a statement which was consistent with the testimony

she gave at trial. Mateen indicated that the property was sparsely furnished and almost void of electronic equipment while she lived there, and that the Proof of Loss greatly exaggerated the property's contents.

In light of Mateen's testimony in particular, the court concludes that Allstate has proven by a preponderance of the evidence that the Proof of Loss submitted by Priga did not reflect the true contents of the property at the time of the fire. The court holds that the statements in the Proof of Loss constitute a material misrepresentation in that they were "calculated either to discourage, mislead or deflect the [insurer]'s investigation." *Fine*, 725 F.2d at 184. Under the terms of the policy, such misrepresentation to Allstate during the investigation of Priga's claim renders the policy null and void.

### The Claims Involving Defendant Arthur McNamara

■ Defendant McNamara maintains that, even though defendant Priga's material misrepresentations voided any claims Priga might have had to the insurance proceeds, McNamara is still entitled to the insurance proceeds for the property damage. McNamara argues that, as an assignee he is entitled to the severable coverage on the property. McNamara also makes the equitable argument that he should not bear the costs of rebuilding the property when he was an innocent purchaser.

A basic application of assignment law demonstrates that McNamara may not recover for damage to the property. Because McNamara was an assignee of the property insurance claim, he was subject to defenses that Allstate could assert against Priga:

> [T]he general rule is that an assignee of a non-negotiable chose in action acquires no greater right than was possessed by his assignor, and simply stands in the shoes of the latter.... In an action on the claim assigned, the assignee is ordinarily subject to any setoff or counterclaim available to the obligor against the assignor and to all other defenses and equities which could have been asserted against the chose in the hands of the assignor at the time of the assignment.

6 Am.Jur.2d *Assignments* § 102 (1990) (citations omitted). Connecticut law recognizes such limitations on an assignee's rights, provided any defenses available to the obligor arose before the obligor received notice of the assignment. *Bridgeport–City Trust Co. v. Niles–Bemont–Pond Co.*, 128 Conn. 4, 10, 20 A.2d 91 (1941).

In the instant case, Allstate received notice of the assignment from Priga to McNamara on October 2, 1987. Priga made two material misrepresentations to Allstate regarding his residency, the first of which occurred in his signed statement to James McKenna on September 22, 1987. Because Priga made this initial misrepresentation to Allstate before Allstate had notice of the assignment to McNamara, McNamara had no better claim to the insurance proceeds than did Priga. McNamara took the assignment subject to Allstate's valid defense of material misrepresentation on the residency issue. *See G & M Auto Supply, Inc. v. American Fid. Ins. Co.*, No. B–82–217, at 5 (RCZ) (D.Conn. Oct. 11, 1990).

### CONCLUSION

For the reasons set forth above, declaratory judgment shall enter for the plaintiff, Allstate Insurance Company, and against the defendants, Robert Priga, A.A. McNamara & Sons, Inc., and Arthur McNamara on their counterclaims for breach of contract.