**Andrevil EXANTUS and Annette Exantus, Plaintiffs,**

v.

**METROPOLITAN PROPERTY & CASUALTY INSURANCE CO., Defendant.**

**Civil Action No. 3:06–cv–1601 (JCH).**

United States District Court,
D. Connecticut.

Sept. 9, 2008.

---

Eric G. Blomberg, Berkowitz & Reinken, Stamford, CT, Noah Eisenhandler, New Haven, CT, for Plaintiffs.

Joel J. Rottner, Susan L. Miller, Skelley Rottner, W. Hartford, CT, for Defendant.

## RULING RE: DEFENDANT'S SUBSTITUTE MOTION FOR SUMMARY JUDGMENT (DOC. NO. 63)

JANET C. HALL, District Judge.

The plaintiffs, Andrevil and Annette Exantus ("Exantuses"), bring this action against the defendant, Metropolitan Property and Casualty Insurance Company ("Metropolitan"). The Exantuses entered into a homeowners' insurance policy with Metropolitan to cover their home in Stamford, Connecticut. Subsequently, their house was destroyed by fire and the Exantuses submitted a claim to Metropolitan for their personal property, real property, and additional living expenses. Metropolitan made various advance payments to the Exantuses to cover their costs, but ultimately refused to pay more, claiming that the Exantuses made material misrepresentations regarding their claim, which rendered the contract of insurance void. As a result, the Exantuses initiated this action against Metropolitan alleging breach of contract, bad faith, and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. § 42–110b *et. seq.*, and the Connecticut Unfair Insurances Practices Act, Conn. Gen.Stat. § 38a–815 *et. seq.*

Metropolitan has moved for summary judgment as to all of the Exantuses claims (Doc. No. 63). Metropolitan has also moved for Summary Judgment on its counterclaim for payments made to the Exantuses pursuant to the insurance policy. For the reasons stated below, Metropolitan's Motion is GRANTED in part and DENIED in part.

## I. FACTS[1]

Metropolitan issued a homeowner's insurance policy ("Policy") to the Exantuses for their home, located at 62 Wilder Road in Stamford, Connecticut. The Policy provided coverage from October 4, 2004,

1. For the purposes of the instant motion, the court accepts facts undisputed by the parties

through October 4, 2005. Def's 56(a)(1) Stat. Exh. A. The Policy further provided that the entire contract is void if the insured intentionally conceals or makes materially false statements or engaged in fraudulent conduct related to the insurance. *Id.* at 22. The policy also requires the Exantuses to submit to an examination under oath in connection with any claim. *Id.* at 11. On August 4, 2005, a fire occurred at the Exantus' home. After the fire, the Exantuses submitted a claim to Metropolitan for their real property, additional living expenses, and personal property pursuant to the Policy.

## A. Real Property Claim

Following the fire, the Exantuses hired a certified public adjuster, Giordano Associates, Inc., to assist the Exantuses in determining how to handle the insurance claim. Andrevil Exantus Aff. at ¶ 40. Specifically, Anthony Parise, who works with Giordano Associates, assisted with adjusting the Exantus' claim.

On September 9, 2005, Metropolitan sent the Exantuses an estimate for $313,817.56. On September 19, 2005 Metropolitan advanced a check to the Exantuses in the amount of $250,650.00. This amount represented the actual cash value of Metropolitan's estimate to rebuild the Exantus home, minus the plaintiff's deductible. Def's 56(a)(1) Stat. at ¶ 12. On December 8, 2005, the Exantuses entered into a contract with United Cleaning and Restoration, LLC., to rebuild their home for $524,632.25. *Id.* at ¶ 13.

Because the two parties could not agree on the cost to rebuild the Exantuses' home, on February 1, 2006, Parise wrote a letter to Metropolitan's representative, Robert Pomerleau, asserting a formal demand of appraisal pursuant to the insurance policy. Pl's Mem. in Opp., Exh. 52; *see also id.* Exh. 26 at 12. The Exantuses appointed Frank Kolb to act as their appraiser for fire loss. *Id.*, Exh. 19 at ¶ 2. Similarly, Metropolitan appointed Stuart Blackburn. *Id.* On June 19, 2006, the two appraisers met concerning the fire loss claim. Together, they agreed to appoint Bernard Ladden as an umpire to determine the costs of repair and/or replacement of the Wilder Road home. At this meeting, Kolb presented his appraisal in the amount of $473,950.28. This amount represented the total cost of repairs to the Wilder Road home. Blackburn appraised the home at $356,758.81.

On February 23, 2007, Ladden met with Kolb and Blackburn and stated that the full cost of repair and replacement of loss as $404,001.63. The parties dispute when this award was officially rendered and signed by Kolb. *See, e.g.,* Pl's Mem. in Opp., Exh. 19 at ¶ 10–17; *id.,* Exh. 27. at ¶ 10.[2]

## B. Additional Living Expenses Claim

Pursuant to the insurance policy, after the fire, the Exantuses submitted a claim for additional living expenses to Metropolitan. These additional living expenses included lodging immediately after the fire, lodging while their house was repaired/re-

---

and supported by evidence as true, and resolves disputed facts in favor of the non-moving party, where there is evidence to support its allegations.

**2.** While Metropolitan does not mention this agreed upon submission to appraisal in its papers, the Exantuses cite to an exhibit that appears to be an application to vacate such an appraisal award, filed by Metropolitan on

March 3, 2008. Pl's Mem. in Opp., Exh. 27. This application indicates that the Appraisal was issued on February 4, 2008. The Application to Vacate states that an umpire must render an award within thirty days form the date the hearing was completed. *Id.* at ¶ 15. According to the Application to Vacate, all issues were joined and heard by the umpire more than thirty days prior to issuing of the award. *Id.* at 14.

built, and food while they were staying in hotels. Pursuant to the insurance policy, the Exantuses submitted receipts as proof of their additional living expenses. On August 11, 2005, Metropolitan issued a check to the Exantuses in the amount of $20,000 as an advanced payment for their additional living expenses. Def's 56(a)(1) Stat. at ¶ 3; Pls' 56(a)(2) Stat. at ¶ 3.

### 1. Hotels

As a result of the fire, the Exantuses, along with their nine children, were required to find alternative housing. For the first three days, the Exantuses stayed with the American Red Cross at no charge. Subsequently, the Exantuses were required to stay in hotels until August 15, 2005. With respect to the hotels, the Exantuses submitted a worksheet stating all of their additional living expenses. The worksheet indicates that the Exantuses stayed at the Rodeway Inn and the Hyatt. The Exantuses had charges from Rodeway Inn on August 8, 9 and 10. See Pls' Mem. in Opp., Exh. 8. They had charges from the Hyatt for August 10, 11, 12, 13, 14, and 15. Id. Thus, the Exantuses submitted receipts from two separate hotels for August 10, 2005. In all, the Exantuses incurred $6,123.86 in hotel costs. Id., Exh. 3 at ¶ 30.

### 2. Meals

While the Exantuses were staying in hotels, they ate all of their meals at restaurants. As part of their additional living expenses claim, they submitted receipts for the meals purchased from August 5, 2005, through August 16, 2005. The Exantuses submitted receipts from LaCaye Restaurant for every day that they were at hotels. These receipts were for breakfast, lunch, and dinner for all eleven members of the Exantus family. The receipts from LaCaye for each day are identical. See Def's Mem. in Supp., Exh. C–3. The breakfast charge for eleven people each day was $93.28. The lunch charge for eleven people was $116.00 each day. The dinner charge amounted to $139.92 each day for the entire family. Additionally, the Exantus' submitted receipts from various other restaurants on some of the same days.[3] The total food cost during the twelve days following the fire amounted to approximately $4000. Id., Exh. 3 at ¶ 30.

### 3. Temporary Housing

On August 15, 2005, the Exantuses signed a residential lease for 51 Southfield Avenue in Stamford, Connecticut. The lease term was from August 15, 2005 through March 15, 2006, and the rent was $3,500 per month. Shortly after renting the home on Southfield Avenue, the Exantuses executed a lease for a home on Donata Lane at a cost of $2,400 per month. For a period of time, the Exantuses lived in both homes. Pls' Mem. in Opp., Exh. 2 at ¶ 68. Around November, the Exantuses began occupying only the home on Donata Lane.[4] Id. The Exantus' public adjuster submitted a spreadsheet to Metropolitan representing that the Exantuses occupied the Donata home until March 2006. Id.,

---

3. These additional receipts include the following: Atlantic Pizza House on August 5, 2005, for $32.85, Jani Restaurant on August 8, 2005, for $125.40, Burger King on August 9, 2005, for $49.75, Gazebo Lounge on August 10, 2005, for $130.52, American Steak House on August 11, 2005, for $100.54, Winfield Café on August 13, 2005 for $116.60, and Dunkin Donuts on August 13, 2005, for $12.98

4. This is a disputed fact. Metropolitan asserts that the Exantuses were solely living at Donata drive as of August 2005. Def's Mem. in Supp., Exh. F at 120. The court resolves disputed facts in favor of the non-moving party, where there is evidence to support its allegations. See supra note 1.

Exh. 3 at ¶ 39. Later, Mrs. Exantus explained that this representation was in error. *Id.* at ¶ 44. Mrs. Exantus states that she lived in both homes until November 2005 and later lived solely in the Donata home until June 2006. *Id.* at ¶ 44–46. Thus, according to the Exantuses, the spreadsheet submitted to Metropolitan undervalued their additional living expenses.

### C. Personal Property Claim

On December 16, 2005, Metropolitan wrote a check to the Exantuses for $20,000 as an advanced payment for their personal property claim. On January 27, 2006, the Exantuses submitted a Sworn Statement of Proof of Loss to Metropolitan in support of their personal property claim. In this statement, the Exantuses represented that the replacement cost value of their personal property totaled $217,189.96. This document itemizes all of the contents the Exantus family lost in the fire that subsequently needed to be replaced. *See* Def's 56(a)(1) Stat., Exh. C–12. Each item contains a description, quantity, cost at the time of purchase,[5] and replacement cost. *Id.* The document also states that all cloth-ing items are "new through two years old." It further states that "any item not aged, is unknown and will range from new to five years, as per discription (sic) of item." *Id.* The last two pages of this document are invoices for a $4,316 bathtub and a $1,545 fiberglass entry door. *Id.* at 21–2. The Exantuses now represent that they submitted receipts for the tub and door in error.[6] Pls' Mem. in Opp. at 20. On January 31, 2006, Metropolitan wrote the Exantuses a check in the amount of $45,707.05, as an advanced payment for their personal property claim. Def's 56(a)(1) Stat. at ¶ 16; Pls' 56(a)(2) Stat. at ¶ 16.

Because of the inconsistencies with respect to the additional living expenses (*e.g.,* multiple restaurant receipts for the same day and duplicate hotel bills for August 10) and the inability of Metropolitan's adjuster to verify claims made on the Proof of Loss Statement (*e.g.,* bathtub and fiberglass door), on March 2, 2006, Metropolitan requested that the Exantuses attend an examination under oath to determine the inventory of the contents claimed.[7] In a letter preceding the examination under

---

5. The court construes "unit cost" to refer to the cost at time of purchase.

6. In her deposition, Mrs. Exantus stated that the bathtub had not been delivered at the time of the fire, and the door was just an estimate; they had not purchased it yet. Pls' Mem. in Opp. Exh. 23 at 62–65.

7. The court takes this information from paragraph 17 of Metropolitan's 52(a)(1) Statement (Doc. No. 67). In their response pursuant to Local Rule 56(a)(2), the Exantuses denied paragraph 17, saying, "Denied. Exhibit 3." (Doc. No. 80). Subsequently, on May 9, 2008, Metropolitan filed a Motion to Deem as Admitted paragraph 17 (Doc. No. 92). The court denies the Motion to Deem as Admitted.

Metropolitan correctly notes that, under D. Conn. Civ. R. 56(a), a party opposing summary judgment must file a Local Rule 56(a)(2) statement in which the party indicates whether it admits or denies the facts as set forth in

a movant's Local Rule 56(a)(1) statement. Additionally, when a party files a Local Rule 56(a)(2) statement, "each denial ... must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. Civ. R. 56(a)(3). This specific citation obligation "requires counsel and pro se parties to cite to specific paragraphs when citing affidavits or responses to discovery requests, and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length." *Id.* A party's failure to comply with the specific citation obligation "may result in the court deeming certain facts that are supported by the evidence admitted in accordance with [Local] Rule 56(a)(1)." *Id.*

Similarly, the court notes that the Local Rules further require a nonmoving party to submit a statement of "Disputed Issues of

oath, Metropolitan submitted an amended request and asked that the Exantuses bring with them to the examination a number of documents. Def's 56(a)(1) Stat., Exh. C–14. On May 15, 2006, the Exantuses were each subject to an examination under oath by an attorney representing Metropolitan.[8] The focus of the examination was on the claims for payment made by Metropolitan. Metropolitan was concerned that the documents in the original proof of loss were incomplete.

On May 15, 2005, the Exantuses executed a second Sworn Statement of Proof of Loss. This Proof of Loss stated that the replacement costs of their personal property amounted to $144,450.64 and the actual cash value to be $86,707.05. The Exantuses also submitted a Proof of Loss Statement with regard to their dwelling claim. The claim stated that the replacement cost to rebuild their home was $497,909.56 with an actual cash value of $397,827.66.

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir.2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, apply-

Material Fact." D. Conn. Civ. R. 56(a)(2). This requirement is in addition to a party's obligation to submit responses to a moving party's Local Rule 56(a)(1) Statement. Importantly, this list of disputed issues is also subject to the specific citation requirement. *See id.* To the extent that either party fails to provide specific citations as required by the Local Rules, the court will not search blindly through the record to find support for their claims in the Rule 56 Statements.

In accordance with this, the court notes that both parties failed to cite to a specific citation in reference to paragraph 17. Metropolitan cites the Affidavit of Neil Harvey without citing a specific paragraph or page number. The Exantuses cite Exhibit 3, which also happens to be an Affidavit, without citing a paragraph or page number. Thus, because neither party correctly complied with Local Rule 56, the court denies the Motion to Deem as Admitted. However, despite the fact that no specific citations were given, the court examined the Affidavits and supporting evi-

dence. Metropolitan cites to an Affidavit, receipts, checks, contracts, and a proof of loss statement that support Metropolitan's reason for requesting the examinations under oath as stated in paragraph 17. Conversely, there are no facts in the Exantus' Exhibit 3 that counter Metropolitan's stated reason for requesting the examination under oath and thus, the court treats paragraph 17 as admitted.

The court further notes that, in their "Disputed Issues of Material Facts," the Exantuses *not only* failed to cite to specific citations in support of their asserted material facts, but they also failed to cite to facts that can easily be determined by the record. Rather, they reasserted their Complaint by making broad allegations against Metropolitan. Such "disputed facts" cannot serve as factual support for their Opposition to the Motion for Summary Judgment.

8. On June 22, 2006, Mrs. Exantus attended a second examination under oath.

ing the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York,* 202 F.3d 175, 178 (2d Cir.2000).

## III. DISCUSSION

### A. Breach of Contract (Count I and Counterclaim)

The Exantuses argue that Metropolitan is liable for breach of contract because it refused to pay the full value of the claim pursuant to their policy agreement. Pls' Mem. in Opp. at 41. The Exantuses further allege that they have fulfilled all the terms and conditions of the insurance policy. *Id.* ¶ 6. Conversely, Metropolitan asserts that the Exantuses made material misrepresentations in their property claim, thus rendering the contract void. Further, in its Motion for Summary Judgment, Metropolitan urges the court to enter summary judgment on the breach of contract claim, arguing that there are no genuine issues of material fact regarding the misrepresentations. The Exantuses oppose summary judgment, arguing that the issues regarding the breach of contract are based on facts rather than law and should thus be left to the jury. The court concludes that there are material issues of fact concerning the breach of contract claim.

 Under Connecticut law, an insurance policy may be voided by the insurer if the insured made material representations. *see Allstate Ins. Co. v. Priga,* 810 F.Supp. 373, 378 (D.Conn.1992) (holding that statements in a proof of loss rendered the policy void because they were calculated to "discourage, mislead, or deflect the insurers investigation.")(internal citations omitted). In order to void a contract, the insured must have knowingly made a material misrepresentation. "Innocent misrepresentations—those made because of ignorance, mistake, or negligence—are not sufficient grounds for rescission." *Id.* (citing *Middlesex Mut. Assurance Co. v. Walsh,* 218 Conn. 681, 590 A.2d 957 (1991)).

 The Exantuses do not dispute that there were some inconsistencies in their reporting of the claims. However, according to the Exantus' version of the events, they did not knowingly misrepresent their claims. They claim it was unintentional and did not justify nonpayment by Metropolitan. Moreover, the Exantus' claim that there is a genuine issue of material fact as to whether their misrepresentations where knowing, innocent, or material.

Metropolitan asserts that because there is no dispute that misrepresentations were made, such as including a bathtub and door in their property claim, there is nothing left for the jury to decide. While it is true that there is no dispute that statements were made that were inaccurate, whether evidence supports a claim of fraudulent or negligent misrepresentation is a question of fact, *see, e.g., McClintock v. Rivard,* 219 Conn. 417, 427, 593 A.2d 1375 (1991), that should be left to the jury.

An example of a disputed fact concerns the Exantus' claim that all of their clothing was less than two years old. Def's Mem. in Supp. at 22. The Exantuses dispute that this was a misrepresentation. Pls' Mem. in Opp. at 24–25. They argue that they were only required to provide their "best estimate" of the value of their lost clothing. *Id.* at 30. They further state that only the first page of clothing items were identified as not more than two years old. *Id.* at 28.

Metropolitan relies heavily on two cases to support its claim that there is no question of fact regarding the material misrepresentation. *See Priga,* 810 F.Supp. 373; *Middlesex Mutual Assurance Co. v. Perrino,* 1994 WL 146508 (Conn.Super.1994).

The court notes that, while these cases speak to material misrepresentations, the issues were not decided at summary judgment. Rather, the cases were decided by finders of fact in either a bench trial (*Priga*) or a jury trial (*Perrino*). This further supports the conclusion that such issues should be left to a jury.

Contrary to Metropolitan's position that there is not genuine issue of fact, the court sees these disputes as raising questions of fact that should be left for the jury. Accordingly, the court denies Metropolitan's Motion for Summary Judgment with respect to the breach of contract claim.

Related to the breach of contract claim, Metropolitan asserts a counterclaim for the advance payments it made to the Exantuses. Metropolitan argues that, because the Exantuses made material misrepresentations, the contract is void as a matter of law and thus, the court should direct them to return the advance payments. Reaching the merits of the counterclaim requires reconciling the disputed issues of material fact in the breach of contract claim. Because there are questions of fact regarding the breach of contract claim, the counterclaim should also be decided by a jury. The court, therefore, denies Metropolitan's Motion for Summary Judgment on its counterclaim.

### B. Bad Faith

The Exantuses next argue that Metropolitan violated the duty of good faith and fair dealing that is implied into every Connecticut contract. *See Home Ins. Co. v. Aetna Life & Cas. Co.*, 235 Conn. 185, 201, 663 A.2d 1001 (1995). This duty requires both parties to a contract to conduct themselves in a manner that will not injure the right of the other party to receive the benefits of the agreement. *Id.* "To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to receive ben-

efits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Gore v. Colonial Penn Ins. Co.*, 335 F.Supp.2d 296, 303–4 (D.Conn.2004) (citing *Alexandru v. Strong*, 81 Conn.App. 68, 80–81, 837 A.2d 875 (Conn.App.2004)).

> Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose.

*Id.* at 304 (citing *Habetz v. Condon*, 224 Conn. 231, 237–38, 618 A.2d 501 (1992)) (citations and internal quotation marks omitted). In order to prevail on a claim of bad faith, the plaintiff must show evidence that the insurer acted "unreasonably or contrary to the policy provisions." *Id.* at 306.

Similar to their claim for breach of contract, the Exantuses argue that there are genuine issues of material fact regarding whether Metropolitan acted in bad faith when it refused to fully honor their claim. The Exantuses argue that Metropolitan acted in bad faith when it "avoided payment of the claim for a substantial and unreasonable period of time." Pls' 56(a)(2) Stat. "Disputed Issues of Material Fact" at ¶ 5. The Exantuses also point to the fact that Metropolitan subjected them to examinations under oath as an act of bad faith. Finally, they argue that the fact that Metropolitan did not follow through with the binding arbitration agreement is evidence of bad faith.

The Exantuses have not put forth any evidence that Metropolitan acted with a sinister motive or dishonest purpose. First, the Exantuses admit that they made

some mistakes when submitting their insurance claim. For example, Mrs. Exantus has stated that she attached receipts for the tub and fiberglass door to the proof of loss in error. Furthermore, the Exantuses submitted a second proof of loss that was more than $70,000 less than the initial amount claimed. There are also inconsistencies in the receipts submitted as part of their additional living expenses, such as two hotel receipts for one night and various restaurant receipts for the same day. The Exantuses argue that these inconsistencies and mistakes each account for a very small percentage of their total claim and thus do not warrant deeming the policy void. *See, e.g.*, Pls' Mem. in Opp. at 20. However, the issue of whether the inconsistencies were mere mistakes or more goes to the breach of contract claim, not bad faith.

■ The fact that Metropolitan subjected the Exantuses to examinations under oath is not evidence of bad faith. Metropolitan viewed the inconsistencies as material misrepresentations. Pursuant to the Policy, Metropolitan is entitled to question these inconsistencies and mistakes and subject its insured to examinations under oath to determine the validity of their claims. Def's 56(a)(1) Stat., Exh. A at 11. The Exantuses claim that this was in bad faith and that Metropolitan's lawyer questioned the Exantuses "through innuendo, improper inferences, confusion, and discussion concerning non material mistakes" made in their claim. Pls' Mem. in Opp. at 45. However, the Exantuses put forth no evidence to support their allegation that the examinations were done in furtherance of a "dishonest purpose." *Gore,* 335 F.Supp.2d at 304.

■ Finally, the Exantuses argue that Metropolitan breached its duty of good faith and fair dealing by not complying with the binding appraisal rendered by the independent umpire. Pls' Mem. in Opp. at

45. The Exantuses have not presented any evidence of bad faith in this regard. First, there is a dispute regarding when the umpire rendered its final decision, either in February of 2007 or 2008. *See, e.g., id.* Exh. 27 at ¶ 10; *supra* note 2. Second, the insurance policy allows the insurer to void the contract if it determines the insured made material misrepresentations. Def's 56(a)(1) Stat. Exh. A. at 22. Even assuming that the umpire rendered his decision in 2007, at this point Metropolitan had already deposed the Exantuses and determined that there were material representations. Thus, the appraisal was no longer truly at issue because Metropolitan already deemed the contract void. *See, e.g.,* Def's 56(a)(1) Stat., Exh. C–13 (last check made to Exantuses by Metropolitan dated January 31, 2006); *id.,* Exh. 8 (The Exantuses submit second Proof of Loss on May 15, 2006, but do not attach supporting documents); Pl's Mem. in Opp., Exh. 19 at ¶ 5 (On June 19, 2006, Kolb and Blackburn meet with umpire to discuss the appraisals); Def's 56(a)(1) Stat., Exh. E (June 22, 2006, Mrs. Exantus attended final examination under oath).

There are also facts in the record that counter any suggestion that Metropolitan acted in bad faith. For instance, throughout the course of the investigation into the material misrepresentations, Metropolitan advanced over $360,000 to the Exantuses to cover their additional living expense and property claims. Def's 56(a)(1) Stat. at ¶ 4, 12, 14; Pls' 56(a)(2) Stat. at ¶ 4, 12, 14. The court finds no evidence in the record that Metropolitan violated the covenant of good faith and fair dealing when it questioned the representations made by the Exantuses and ultimately found them to be material.

Based on a review of the record, the court concludes that the Exantuses have

failed to present any evidence upon which a jury could base a finding that Metropolitan acted with a "sinister motive" or "dishonest purpose" when it denied the Exantuses coverage after it found that the Exantuses made material misrepresentations regarding their claim. Therefore, the court grants summary judgment to Metropolitan on the Exantus' claim of bad faith.

### C. CUTPA/CUIPA

Count Three of plaintiffs' Complaint alleges violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUPTA"). CUTPA forbids the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b. CUIPA defines "unfair methods of competition" as applied to the insurance trade. Conn. Gen.Stat. § 38a–815. The Exantuses contend that Metropolitan violated these statutes when it failed to initiated proper procedures with respect to their claim. Specifically they argue that Metropolitan failed to communicate with them in a prompt manner, adopt and implement proper proceedings and refused to pay the claims without a reasonable investigation. Compl. ¶ 11.

The Second Circuit has ruled that CUIPA does not itself provide a private right of action for plaintiffs wronged by allegedly unfair insurance practices. *See Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir.2001). It is possible, however, to bring a CUIPA claim through the private right of action conferred by CUTPA. *See Mead v.*

*Burns,* 199 Conn. 651, 663, 509 A.2d 11 (1986). However, under CUIPA, isolated instances of unfair settlement practices are not sufficient to establish a claim. *Id.* at 666, 509 A.2d 11. The plaintiff must present enough evidence to show that the conduct was created with enough frequency to deem it a "general business practice" of unfair insurance practices. *Id.* at 663–664, 509 A.2d 11; *see also Gore,* 335 F.Supp.2d at 308; *McCulloch v. Hartford Life and Accident Ins. Co.,* 363 F.Supp.2d 169, 182 (D.Conn.2005). The alleged unfair practice must be in relation to more than one single insurance claim. *McCulloch,* 363 F.Supp.2d at 182 (stating "alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct in processing any other claim, does not rise to the level of a general business practice").

In support of this claim, the Exantuses argue that "the defendant undertook a general scheme to avoid paying the plaintiff's monies owed." Pls' Mem. in Opp. at 51. They state that this is in violation of Conn. Gen.Stat. § 38a–816(6)(f). Similarly they allege that Metropolitan violated § 38a–816(6)(h) when it waited three months to increase its settlement offer by approximately $40,000. *Id.* These sections of CUIPA are deemed "unfair settlement practices"[9] and are cited by the defendant as proof of its violations of CUIPA.

However, the statute clearly provides that the violation must be committed "with such frequency as to indicate a general business practice." Conn. Gen.Stat. § 38a–816 (6). Even assuming, *arguendo,* that Metropolitan committed unfair business practices with respect to the Exantus'

---

**9.** The portions of Conn. Gen.Stat. § 38a–816 (6) cited are: (f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and (h) attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

claim, there is no evidence in the record suggesting that they have committed similar violations with respect to other claims. Thus, it does not rise to the level of a general business practice and is therefore not sufficient enough to establish a claim under CUIPA as a matter of law. Therefore, Metropolitan's Motion for Summary Judgment as to the CUIPA/CUPTA claim is granted.

## IV. CONCLUSION

Metropolitan's Motion for Summary Judgment (Doc. No. 63) is GRANTED in part and DENIED in part. It is granted as to the Exantus' claims of bad faith and violations of CUPTA and CUIPA. Their claim for breach of contract remains. Metropolitan's counterclaim also remains. Further, the Motion to Deem as Admitted (Doc. No. 92) is DENIED.

**SO ORDERED**