BENNIE GRAY, JR. *v.* BURTON WEINSTEIN ET AL.
(AC 26161)

Flynn, C. J., and Gruendel and Harper, Js.

Argued May 22—officially released October 7, 2008

*Donald J. O'Brien,* for the appellant (plaintiff).

*Kevin M. Godbout,* for the appellees (defendants).

*Opinion*

HARPER, J. The plaintiff, Bennie Gray, Jr., appeals from the summary judgment, rendered by the trial court

in favor of the defendants, Burton Weinstein and the law firm of Weinstein, Weiner, Ignal, Napolitano & Shapiro, P.C., in the plaintiff's action for legal malpractice. The plaintiff claims that the court improperly applied the doctrine of collateral estoppel to preclude him from litigating the issue of whether Weinstein's failure to move to withdraw the plaintiff's plea of nolo contendere in a prior criminal proceeding caused the plaintiff harm. Specifically, the plaintiff argues (1) that the issue of causation had not been decided previously and, therefore, no prior decision precluded him from litigating the issue and (2), in the alternative, that if the issue had been decided in a prior proceeding, then that decision should not be accorded preclusive effect because it was decided incorrectly. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. DeJohn Strong was fatally shot in New London on November 17, 1997. Soon thereafter, Arthur Wright approached the local police and informed them that before the shooting, the plaintiff had told him that he was carrying a loaded gun and was going to rob Strong. Primarily based on the information provided by Wright, the police sought to arrest the plaintiff for murder. The plaintiff turned himself in to the police the next day. Later, the plaintiff's cousin, Tavorous Fluker, also turned himself in to the police, and both were arrested in connection with the shooting. The court, *Miano, J.*, determined after a probable cause hearing that the state did not have sufficient evidence to charge the plaintiff with murder. The state primarily relied on the testimony of Wright at that hearing. The police subsequently discovered articles of clothing and a gun that were connected with the shooting. At a second probable cause hearing, the court, *Parker, J.*, determined that the state had sufficient evidence to proceed. Both the plaintiff and Fluker were charged with the

murder. The plaintiff's mother, Evelyn Gray, hired Weinstein to represent the plaintiff during the criminal proceedings.

In May, 1998, following the second probable cause hearing, the plaintiff's mother died after her vehicle and a tractor trailer collided. Weinstein immediately took steps to prepare for a wrongful death action on behalf of the estate of the plaintiff's mother. He also filed an application with the Probate Court administering the estate to appoint Debra Bryant the administratrix. Bryant was the plaintiff's aunt and Fluker's mother. The plaintiff, who was dissatisfied with Weinstein's representation of him during the criminal proceedings, opposed the estate's hiring Weinstein to represent it for the wrongful death claim, although Weinstein was hired later for that purpose.

Regarding the criminal proceedings against the plaintiff, Weinstein had drafted a memorandum in which he outlined a self-defense argument that he suggested the plaintiff raise. The plaintiff rejected the self-defense argument and insisted that he did not shoot Strong. Weinstein later presented the self-defense theory to the prosecutor, in the presence of the court, *Handy, J.*, and Fluker's defense attorney, during plea negotiations, despite his lack of authorization to do so. The prosecutor offered to reduce the charge from murder to manslaughter and indicated that he would ask for a maximum sentence of twenty years incarceration. Weinstein presented the state's offer to reduce the charge from murder to manslaughter to the plaintiff, who initially rejected it and insisted on going to trial. Eventually, after continuing pressure from Weinstein, the plaintiff did accept the plea bargain and entered a plea of nolo contendere to manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a. The sentencing court, *Miano, J.*, imposed a sentence of twenty years incarceration consecutive to

a three year sentence that the plaintiff was already serving on charges unrelated to the shooting. Meanwhile, Strong's family had initiated a wrongful death action against the plaintiff shortly after the plaintiff's arrest. The case was tried, and the jury returned a verdict in favor of the plaintiff in October, 2001, and the court rendered judgment on the verdict on December 17, 2001.[1]

The plaintiff initiated this legal malpractice action on November 14, 2001. He filed the second amended complaint on May 28, 2003. The second amended complaint contains five counts, although in substance, they all relate to the plaintiff's allegation of legal malpractice stemming from Weinstein's representation of the plaintiff during the criminal proceedings.[2]

The plaintiff filed a petition for a writ of habeas corpus in March, 2002, while the civil malpractice action was pending.[3] In the habeas petition, the plaintiff alleged, in five counts, that he was actually innocent, that there was insufficient evidence at the second probable cause hearing for the state to proceed against him,

---

[1] Although the plaintiff mentions the civil wrongful death action in his complaint, he raises no argument on appeal regarding the relevance, if any, of the jury's verdict of not guilty to his challenge to the court's summary judgment.

[2] The five counts alleged (1) breach of contract, (2) legal malpractice against Weinstein, (3) intentional misrepresentation, (4) breach of fiduciary duty, (5) breach of the implied covenant of good faith and fair dealing and (6) malpractice against the law firm. The court determined that in substance, the entire complaint was of legal malpractice. The plaintiff does not challenge this determination.

[3] The plaintiff, acting pro se, had filed a prior petition for a writ of habeas corpus in 1999 before the initiation of the malpractice action. The plaintiff was denied the relief requested in that petition. Although the court in the present case referenced the earlier habeas proceeding in its ruling on the defendants' motion for summary judgment, the court relied on the prejudice analysis provided by the second habeas court, Hon. Richard M. Rittenband, judge trial referee, to determine the collateral estoppel question presented in this appeal. Therefore, we focus on the plaintiff's second habeas proceeding.

that he had received ineffective assistance of counsel from Weinstein, that Weinstein had engaged in intentional misconduct and that the plaintiff did not enter the plea of nolo contendere voluntarily.

The habeas court, *Hon. Richard M. Rittenband,* judge trial referee, conducted a twenty-nine day hearing, after which it denied the relief sought. It reviewed the plaintiff's allegations of ineffective assistance of counsel related to the plea of nolo contendere, pursuant to the principles of *Strickland* v. *Washington,* 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as modified for pleas of nolo contendere by *Hill* v. *Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), and its progeny. The habeas court determined that the plaintiff had demonstrated that Weinstein had provided improper assistance pursuant to the first prong of the *Strickland-Hill* analysis. Specifically, the habeas court concluded: "The [plaintiff] has persuaded this court that Weinstein used improper tactics to pressure the [plaintiff] to plead nolo contendere and accept the plea bargain . . . ." The court referenced several of Weinstein's actions to support this conclusion. For example, the court found that "[t]here is no question that Weinstein misled [the plaintiff] as to the terms of the plea bargain, which he urged [the plaintiff] to accept. The prime example of this is Weinstein's letter to [the plaintiff] . . . . The letter is replete with misstatements." The habeas court highlighted the following passage in the letter: " 'Judge Miano would take the plea and would be imposing the sentence. While there is no guarantee as to what the sentence would be within the legal range, he has indicated that the time you are now serving could run concurrently with the mandatory minimum of [five] years and you would get credit for the pretrial detention against the [five] years. If the plea bargain was accepted, you could be out in [three]

years.' " The habeas court found that this passage reasonably misled the plaintiff into believing that Judge Miano had promised to sentence the plaintiff to no more than five years incarceration if the plaintiff entered a plea of nolo contendere. The habeas court found, however, that there was no evidence suggesting that Judge Miano had ever given such an indication. The court also faulted Weinstein for his representation to the plaintiff that the prosecutor had promised not to seek any particular sentence, when the evidence showed that the prosecutor had indicated to Weinstein that he would seek a sentence of twenty years incarceration. In addition to providing misleading information, the habeas court found that Weinstein improperly had threatened to withdraw his representation of the plaintiff if the plaintiff did not enter a plea of nolo contendere. Specifically, the habeas court found that Weinstein had told the plaintiff that he would be unable to represent the plaintiff at trial, pursuant to an alibi theory, after having already raised a self-defense theory during plea negotiations. The habeas court concluded that "this threat to withdraw and the basis for it was just another attempt or tactic to pressure [the plaintiff] into accepting the plea bargain which he eventually adopted."

Despite its dissatisfaction with the manner of Weinstein's representation, however, the habeas court further concluded that the plaintiff had failed to satisfy the second prong of the *Strickland-Hill* analysis because he failed to demonstrate that he was prejudiced by Weinstein's actions. The habeas court began its prejudice analysis by noting that "[i]f the standard for granting a habeas petition were that the court could grant the petition if it concluded that there was a reasonable doubt as to the guilt of the [plaintiff], this court, based on the evidence that has been presented at this habeas trial, would probably find reasonable doubt as to the guilt of the [plaintiff]. . . . However, that is not the

standard. The standard is: is there a reasonable probability that if it were not for the ineffectiveness of counsel for the [plaintiff, that] there is a reasonable probability that the outcome would have been different? Based on that standard, as much as the court may have sympathy for the plight of the [plaintiff], *it cannot objectively say that there is a reasonable probability that the result would have been different.*" (Emphasis added.) The court then clarified its finding by providing that "[d]espite what appears to be a weakness in the state's case, there is sufficient evidence, if believed by the jury, to result in a conviction." Thus, despite its concerns regarding the persuasiveness of the evidence that the state could have produced against the plaintiff had his criminal case gone to trial, the court concluded that the plaintiff failed to demonstrate a reasonable probability that the outcome would have been different but for Weinstein's improper actions. The court denied the relief requested but granted the plaintiff's petition to appeal from the decision.[4]

Turning to the malpractice case, the defendants initially filed a motion for summary judgment on August 9, 2004. After learning of the habeas court's determination,

---

[4] This court affirmed the determination of the habeas court in a per curiam opinion. *Gray* v. *Commissioner of Correction*, 99 Conn. App. 444, 914 A.2d 1046, cert. denied, 282 Conn. 925, 926 A.2d 666 (2007). This court noted: "The habeas court concluded that, although trial counsel had misled the [plaintiff], and although the habeas judge personally had doubts about the [plaintiff's] guilt, the [plaintiff] had failed to establish that there was a reasonable probability that, if the [plaintiff] had gone to trial, the result would have been different." Id., 445. This court then determined that the "habeas court recognized and applied the correct standard for adjudicating the petitioner's habeas claim. It asked whether there was a reasonable probability that if it were not for the ineffectiveness of counsel for the [plaintiff], there is a reasonable probability that the outcome would have been different? In answering this question the habeas court concluded that as much as the court may have sympathy for the plight of the [plaintiff], it cannot objectively say that there is a reasonable probability that the result would have been different." (Internal quotation marks omitted.) Id., 448.

the defendants successfully moved to amend their motion for summary judgment to include the defense of collateral estoppel to the plaintiff's claims involving the plea of nolo contendere. The trial court heard oral argument on the defendants' amended motion for summary judgment on October 25, 2004. The plaintiff's attorney failed to appear to argue against the motion. The court granted the motion, in part, following oral argument, on the basis of a statute of limitations defense as well as a collateral estoppel defense unrelated to the collateral estoppel defense at issue on appeal. The issues decided on October 25, 2004, have not been challenged on appeal. The trial court then requested supplemental briefing on the issue of whether the habeas court's determination that the plaintiff had not been prejudiced by Weinstein's improper conduct—inducing the plaintiff to enter a plea of nolo contendere—precluded the plaintiff from litigating in the legal malpractice case the issue of whether Weinstein's actions regarding the plea caused the plaintiff to suffer harm, an element of the claim of legal malpractice. Oral argument was held on December 7, 2004. The court first addressed, in a written decision, the plaintiff's claim that Weinstein applied improper pressure to induce him to accept the plea bargain. The trial court found that the habeas court's ruling on the similar claim raised during the habeas trial had preclusive effect. The plaintiff has not challenged the court's determination that he is precluded from litigating in the malpractice action the issue of whether Weinstein's conduct inducing the plea caused him harm. The court then addressed the plaintiff's claim that Weinstein committed malpractice when he ignored the plaintiff's request that he move to withdraw the nolo contendere plea at the sentencing hearing and to notify the court that he had misled the plaintiff about the substance of the plea bargain. Although it recognized that the habeas court did not

specifically address whether it was improper for Weinstein to ignore the plaintiff's request to withdraw the plea at the sentencing hearing, the trial court found that the prejudice component to this claim was indistinguishable from the prejudice component of the claim that the habeas court did address, namely, the improper pressure to enter a plea of nolo contendere initially. The court, therefore, concluded that the plaintiff was also precluded from relitigating the issue of causation in the context of his claim that Weinstein improperly failed to move to withdraw the plea at sentencing. The court then granted the defendants' motion for summary judgment and rendered judgment thereon. From that judgment, the plaintiff has appealed.

The plaintiff raises two arguments challenging the judgment of the court: (1) the trial court improperly concluded that the habeas court actually determined the issue of whether Weinstein's failure to move to withdraw the plea of nolo contendere at the sentencing hearing caused the plaintiff prejudice; and (2) to the extent that the habeas court did determine this issue, the trial court improperly accorded it preclusive effect because the prior determination of the issue was legally incorrect.[5] We disagree with both arguments and affirm the judgment of the trial court.

The doctrine of collateral estoppel generally "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel,

[5] The plaintiff does not argue that the doctrine of collateral estoppel is inapplicable, as a general matter, to preclude litigating an issue in a malpractice action that had been previously decided pursuant to a habeas corpus proceeding, and, therefore, we do not review this issue. We note, however, that the court was unable to find any Connecticut appellate decision addressing this issue, and the parties have not brought any to the attention of this court on appeal.

it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 772–73, 770 A.2d 1 (2001). We conduct a plenary review to determine whether the court's summary judgment, rendered on the basis of the doctrine of collateral estoppel, was proper. See *Viola* v. *O'Dell*, 108 Conn. App. 760, 763–64, 950 A.2d 539 (2008).

The basic elements of a claim of legal malpractice are "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Alexandru* v. *Strong*, 81 Conn. App. 68, 75, 837 A.2d 875, cert. denied, 268 Conn. 906, 845 A.2d 406 (2004). To prove causation, the plaintiff must demonstrate that he "would have been successful in pursuing [his] claim [or defense] but for the defendant's [wrongful act or] omission." Id., 76. Our Supreme Court has recently reiterated that "the governing legal principles in cases involving claims of ineffective assistance of counsel arising in connection with guilty pleas are set forth in *Strickland* [v. *Washington*, supra, 466 U.S. 687–88] and *Hill* [v. *Lockhart*, supra, 474 U.S. 59]." *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 598, 940 A.2d 789 (2008). The *Strickland-Hill* standard prescribes a two-pronged analysis. The petitioner must demonstrate that "counsel's representation fell below

an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) Id.

I

The plaintiff first argues that the court improperly determined that the issue of whether Weinstein's failure to move to withdraw the plea caused the plaintiff harm had already been decided. The plaintiff's reasoning appears to be as follows. Although the parties actually litigated the claim that Weinstein had provided ineffective assistance of counsel because he failed to move to withdraw the plea at the sentencing hearing,[6] the court did not specifically address this claim in its memorandum of decision. Therefore, the plaintiff asserts, no part of that claim was actually determined, including the issue of whether Weinstein's omission prejudiced the plaintiff. Thus, the plaintiff concludes, there is no prior determination of the issue to preclude him from litigating causation in the present malpractice action.[7] We

---

[6] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceedings at which the sentence was imposed."

Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . .

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

[7] The plaintiff also devotes a significant portion of his analysis of this argument attempting to demonstrate that he did, in fact, suffer prejudice, or harm, because Weinstein misled him and then failed to move to withdraw the plea. Whether the plaintiff suffered prejudice, however, is irrelevant to the determination of whether the habeas court actually determined the issue of prejudice in the prior proceeding.

conclude that the causation issue was decided by the habeas court and therefore reject this argument.

The plaintiff's malpractice complaint included the following allegation, as relevant to this argument. "[Weinstein], knowing that the plaintiff wanted to withdraw his nolo contendere plea entered after misrepresentations and threats made to the plaintiff and his family members regarding his sentence and the effort that . . . Weinstein would put forth if he didn't get the civil case, failed to make that request to the court." To succeed on this claim of legal malpractice, the plaintiff would have had to prove, among other things, that, but for Weinstein's improper failure to attempt to withdraw the plea, the plaintiff would have proceeded to trial and been successful in pursuing his defense. See *Alexandru* v. *Strong*, supra, 81 Conn. App. 75–76.

The habeas court explicitly analyzed the plaintiff's claim that Weinstein rendered ineffective assistance because Weinstein had improperly pressured the plaintiff to enter the plea of nolo contendere to a charge of manslaughter. The habeas court agreed with the plaintiff that Weinstein's actions were improper. It ultimately rejected the plaintiff's claim, however, because it determined that the plaintiff had failed to demonstrate that if he had proceeded to trial, there was a reasonable probability that his defense would have been successful.

The trial court, reviewing the plaintiff's legal malpractice claims, concluded that the plaintiff would have to prove the same issue for causation on both his claims— that Weinstein had improperly induced the plea and that he then improperly failed to move to have it withdrawn. On both claims, the plaintiff had to prove that there was a likelihood that, had he gone to trial, he would have been successful. The plaintiff offers no argument challenging the court's conclusion that the

same analysis is required to determine causation for either of the claims of malpractice, and we can discern no difference within the context of a legal malpractice action.[8] Instead, the plaintiff relies on the fact that the court did not explicitly analyze the particular claim he is attempting to raise in the malpractice action. For the purpose of applying collateral estoppel, however, the defendants need only to show that the same *issue* had been previously determined. Here, the gist of the plaintiff's legal malpractice claim is that but for Weinstein's acts and omissions, he would not have entered a plea of nolo contendere and would have proceeded to trial. Accordingly, the plaintiff bears the burden of proof to demonstrate that there is a reasonable probability that he would have been successful in his defense at the criminal trial. The habeas court determined that he would not. Therefore, we reject the plaintiff's argument that the issue of causation had not already been determined.

II

The plaintiff next invites this court to revisit the determination of the habeas court. He asks us to find that to the extent that the habeas court did determine the issue of prejudice, this issue was improperly decided and therefore should not be given preclusive effect. The plaintiff states in his brief that "the trial court in [this] case was in error for giving collateral estoppel effect to a flawed opinion by the habeas court, which was affirmed on appeal."

---

[8] Although the issue was not mentioned in the parties' appellate briefs, we are aware that in *Alexander* v. *Commissioner of Correction*, 103 Conn. App. 629, 639, 930 A.2d 58, cert. denied, 284 Conn. 939, 937 A.2d 695 (2007), the issue was raised as to whether the petitioner in a habeas proceeding must show actual prejudice when he had instructed his attorney to withdraw his guilty plea at sentencing and his attorney refused. This court declined to review the issue because it was not raised before the habeas court. Id., 639–40.

The plaintiff asserts that the habeas court's analysis supporting its conclusion that he failed to demonstrate prejudice arising from Weinstein's representation is flawed in two respects. First, he asserts that the habeas court misinterpreted the *Strickland-Hill* prejudice prong by believing that the court was unable to find prejudice unless the plaintiff could show that no trier of fact could possibly find him guilty on the evidence the state would likely present. Instead, the plaintiff asserts, the habeas court should have determined only whether there is a *reasonable probability* of his success at trial. Second, the plaintiff asserts that the habeas court improperly believed that it was precluded from assessing the credibility of the witnesses the state would have produced at trial in evaluating the likely outcome had the case gone to trial.

The plaintiff also challenges this court's judgment affirming the habeas court's judgment. He asserts, first, that this court misinterpreted the habeas court's analysis by concluding that the habeas court rested its conclusion on the probable findings of a reasonable jury and, second, that this court improperly failed to inform the habeas court that it could assess credibility in conducting its prejudice evaluation.

We have no occasion here to review any of the challenges the plaintiff raises to the correctness of these prior decisions. The plaintiff provides no authority and engages in no analysis demonstrating that even if the prior determination of the issue of prejudice were legally flawed, this, alone, would strip the prior determination of its preclusive effect. Therefore, we decline to review this claim as inadequately briefed. See *State* v. *Sawyer*, 279 Conn. 331, 342 n.11, 904 A.2d 101 (2006).

The judgment is affirmed.

In this opinion the other judges concurred.