## LAUREN HEYSE ET AL. *v.* WILLIAM CASE ET AL.
### (AC 29289)

Bishop, Robinson and Peters, Js.

Argued February 10—officially released June 2, 2009

*Jonathan M. Starble,* for the appellant (named plaintiff).

*Kerry R. Callahan,* for the appellee (defendant Connecticut Attorneys Title Insurance Company).

*Opinion*

PETERS, J. An insurance company's duty to provide its insured with indemnity, or to undertake a defense on the insured's behalf, depends on whether the terms of the insurance policy provide coverage for the dispute in which the insured is engaged. *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.,* 274 Conn. 457, 463, 876 A.2d 1139 (2005). In this case, the principal issue is whether a title insurance policy provided coverage for a dispute about subdivision rights between the insured and another member of a planned community organized under General Statutes § 47-220.[1] Concluding

---

[1] General Statutes § 47-200 et seq. "is a comprehensive legislative scheme regulating all forms of common interest ownership that is largely modeled on the Uniform Common Interest Ownership Act." *Nicotra Wieler Investment Management, Inc.* v. *Grower,* 207 Conn. 441, 447, 541 A.2d 1226 (1988).

that two exclusions in the insured's policy establish that she has no coverage for this dispute, the trial court granted the insurer's motion for summary judgment. The insured has appealed. We affirm the judgment of the trial court.

In a multicount complaint filed on August 21, 2006, the plaintiff Lauren Heyse and others challenged the right of the defendants William Case and Tria Case to subdivide a lot within a common interest community in New Hartford known as West Hill Estates. In count four of the complaint, the plaintiff sought a declaratory judgment that a title insurance policy issued by the defendant Connecticut Attorneys Title Insurance Company[2] obligated the defendant to defend and to indemnify her in her pursuit of her alleged right to enforce a limitation on subdivisions allegedly established in the documents creating the common interest community. In count five, the plaintiff sought monetary compensation for the defendant's alleged failure to honor the implied duty of good faith and fair dealing in her title insurance policy. The defendant filed a motion for summary judgment, challenging the merits of both of the plaintiff's claims. The court granted the motion, and the plaintiff has appealed from the summary judgment rendered in favor of the defendant.

## I

## JURISDICTION

During the pendency of this appeal, the court permitted the plaintiff to amend her complaint by adding a sixth count against the defendant. The merits of that count have not yet been addressed by the court. Regardless of its merits, however, the filing of this belated amendment requires us to decide whether we continue

---

[2] Because this appeal concerns only the plaintiff Lauren Heyse and the defendant Connecticut Attorneys Title Insurance Company, we refer to them in this opinion as the plaintiff and the defendant, respectively.

to have jurisdiction to hear the plaintiff's appeal from the existing judgment on counts four and five. We conclude that we have jurisdiction to hear the appeal.

Although "[a] judgment that disposes of only a part of a complaint is not a final judgment . . . [o]ur rules of practice . . . set forth certain circumstances under which a party may appeal from a judgment disposing of less than all of the counts of a complaint. Thus, a party may appeal if the partial judgment disposes of all causes of action against a particular party or parties . . . ." (Citation omitted; internal quotation marks omitted.) *Rino Gnesi Co.* v. *Sbriglio*, 98 Conn. App. 1, 7–8, 908 A.2d 1, cert. denied, 280 Conn. 945, 912 A.2d 480 (2006); Practice Book § 61-3. Pursuant to this rule of practice, this court had jurisdiction to hear the plaintiff's appeal at the time that it was filed because the only counts in her complaint that were addressed to the defendant had been decided by the judgment rendered on the defendant's motion for summary judgment.

Our assessment of the jurisdictional consequence of the plaintiff's amendment of her complaint is governed by the decision of our Supreme Court in *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 899 A.2d 586 (2006). In *RAL Management, Inc.*, the court held: "In considering the effect of the opening of a judgment on a pending appeal . . . the appropriate question is whether the change to the judgment has affected the issue on appeal. If, in opening the judgment, the court reverses itself and resolves the matter at issue on appeal in the appellant's favor, it is clear that the appeal is moot as there is no further practical relief that may be afforded. . . . Conversely, if the judgment is opened to address issues entirely unrelated to the appeal, the opening of the judgment has had no effect on the availability of relief. A more difficult question may be presented if the trial court addresses the matter

at issue on appeal, but does not entirely afford the appellant the relief sought. In such cases, the extent to which the court alters the judgment may require either a new appeal or an amended appeal. See Practice Book §§ 61-9 and 63-1 (c) (3). As [t]he determination of whether a claim has become moot is fact sensitive . . . the facts of each case similarly must dictate the appropriate procedure to follow." (Citations omitted; internal quotation marks omitted.) *RAL Management, Inc.* v. *Valley View Associates*, supra, 691–92.

In light of *RAL Management, Inc.*, we are persuaded that the plaintiff's addition of a sixth count to her complaint setting forth a new cause of action against the defendant, whatever its merits, does not deprive this court of jurisdiction to hear her appeal from the court's judgment on counts four and five. Significantly, *RAL Management, Inc.*, did not hold that the filing of a motion to open a judgment per se had immediate jurisdictional consequences for a pending appeal. We are persuaded that the filing of an additional count likewise should not be deemed to require dismissal of a pending appeal. In either case, resolution of a new claim at some time in the future might make some part of the existing trial court judgment moot, and might make some part of an appellate judgment moot. We will not, however, presume mootness because, as our Supreme Court has noted, mootness is fact sensitive. Id., 692. There is no such thing as anticipatory mootness.

Although the plaintiff cites *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 930 A.2d 682 (2007), for a contrary holding, we are not persuaded of the applicability of that case. In *Mazurek*, at the time the appeal was filed, the court had *not* resolved all the claims against a party to the appeal. Id., 34. The parties had engaged in procedural manipulation to create "an artificial final judgment," which our Supreme Court refused to countenance. Id., 33. In this case, there was nothing

artificial about the judgment at the time that it was rendered. We are persuaded, therefore, that we have jurisdiction to address the merits of the plaintiff's appeal.

## II

## COVERAGE

The plaintiff's principal claim on appeal is that the court improperly granted the defendant's motion for summary judgment with respect to the coverage afforded to her by the terms of the title insurance contract that she purchased when she bought her property in West Hill Estates. The standard of review governing this claim is well established. Practice Book § 17-49 directs a court to render summary judgment "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, supra, 284 Conn. 26–27.

The relevant facts underlying the court's decision to render summary judgment on count four of the plaintiff's complaint are undisputed. West Hill Estates was created in 1991 as a common interest community by the filing and recording of a declaration. One of the eight initial units in West Hill Estates was lot 9, which

the plaintiff purchased in 1993. Pursuant to General Statutes § 47-36$l^3$ the plaintiff's purchase of lot 9 entitled her to enforce § 13.4 of the declaration, which stated that "[e]xcept to the extent expressly permitted . . . by other provisions of . . . this Declaration, no amendment may . . . increase the number of Lots [or] change the boundaries of any Lot . . . in the absence of unanimous consent of the Lot Owners."

In 2005, the Cases, the owners of lot 1C, initiated proceedings for subdivision approval of their property without having obtained the plaintiff's consent. The Cases claim that they do not need the plaintiff's consent because they have acquired special development rights under "other provisions" of the declaration. The plaintiff disputes the Cases' claim for two reasons. She disagrees with the Cases' contention that the declaration contained a reservation for the special development rights that the Cases are purporting to exercise. In the alternative, she argues that, even if such rights once existed, they were never validly conveyed to the Cases.

The defendant maintains that the title insurance policy that it issued to the plaintiff in 1993 does not require it to defend the plaintiff or to indemnify her in her dispute with the Cases about their rights to subdivide lot 1C. In its motion for summary judgment, it relied on two provisions in the insurance policy that the court found to be applicable and dispositive.

The first provision cited by the defendant is an exclusion in the part of the plaintiff's title insurance policy that defines the coverage provided by the policy. The clause begins by stating that the defendant "insures, as

---

[3] General Statutes § 47-36*l*, entitled, "Type of estate deemed to be included in conveyance," provides: "In any conveyance of real property all rights, privileges and appurtenances belonging or appertaining to the granted or released estate are included in the conveyance, unless expressly stated otherwise in the conveyance and it is unnecessary to enumerate or mention them either generally or specifically."

of Date of Policy . . . against loss or damage" sustained or incurred by the plaintiff by reason of (1) title being vested other than in the plaintiff, (2) any defect in title, (3) any unmarketability of title or (4) lack of access to and from the land. Exclusion 3 (d) then provides that matters "attaching or created *subsequent to Date of Policy*" (emphasis added) are excluded from coverage. Because the Cases did not attempt to subdivide lot 1C until approximately twelve years after the defendant's issuance of the plaintiff's insurance policy, the court agreed with the defendant that exclusion 3 (d) applied and barred the plaintiff's claim.

The plaintiff argues, however, that the defendant's reliance on exclusion 3 (d) is unpersuasive. As a general matter, the plaintiff maintains that the insurance policy is ambiguous because it does not define the circumstances under which a loss would be considered to be "aris[ing] by reason of" the excluded matters. More narrowly, the plaintiff maintains that, because the Cases base their claimed right to subdivide on provisions in the 1991 declaration establishing West Hill Estates, their claim is a defect in the plaintiff's title that *was* in existence in 1993 when she purchased her insurance policy from the defendant and was not unambiguously excluded by the policy exclusion for a defect "attaching or created subsequent" to the date of the issuance of the policy.

Our analysis of the plaintiff's arguments starts from the well established principle of contract construction that we must "construe the terms of an insurance policy in favor of insurance coverage because it is the insurance company that has drafted the terms of the policy." *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 375, 593 A.2d 498 (1991). Nonetheless, "[a]lthough policy exclusions are strictly construed in favor of the insured . . . the mere fact that the parties advance different interpretations of the language in

question does not necessitate a conclusion that the language is ambiguous. . . . The interpretation of an insurance policy is based on the intent of the parties, that is, the coverage that the insured expected to receive coupled with the coverage that the insurer expected to provide, as expressed by the language of the entire policy. . . . The words of the policy are given their natural and ordinary meaning, and any ambiguity is resolved in favor of the insured." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 796, 967 A.2d 1 (2009).

Because, in the absence of evidence of actual intent or other issues of fact, the plaintiff's claims of ambiguity raise only issues of law, they are reviewable on appeal even though the trial court did not rule on all of them expressly and the plaintiff failed to move for an articulation from that court. See *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395–96, 757 A.2d 1074 (2000). Nonetheless, "[t]he fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous. . . . Moreover, [t]he provisions of the policy issued by the defendant cannot be construed in a vacuum. . . . They should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy." (Citation omitted; internal quotation marks omitted.) Id., 399–400.

The plaintiff's broader argument of ambiguity focuses on the introductory language in exclusion 3 in her insurance policy that states that the defendant is not required to "pay loss or damage, costs, attorney['s] fees or expenses which arise by reason of . . . (3) Defects, liens, encumbrances, adverse claims or other matters . . . (d) attaching or created subsequent to Date of Policy . . . ." The plaintiff complains that the policy improperly fails to define "defects," "adverse claims"

or "other matters," and does not articulate how a loss would be considered "aris[ing] by reason of" one of these enumerated exclusions.

The plaintiff's complaint that the policy contains these undefined terms is unpersuasive on its own terms. Except for stating her concerns, the plaintiff has not offered a reasoned argument or supporting authority to establish her claim that this nontechnical language is vague or misleading. Therefore, we decline to review this claim as inadequately briefed. See *State* v. *Clark*, 255 Conn. 268, 281 n.30, 764 A.2d 1251 (2001); *Gray* v. *Weinstein*, 110 Conn. App. 763, 777, 955 A.2d 1246 (2008).

The plaintiff's second and narrower contention stands on a different footing. The plaintiff argues that the title insurance policy's exclusion for liens "attaching or created subsequent to Date of Policy" does not unambiguously exclude coverage for her dispute with the Cases because that dispute brought to light a cloud on her title that existed in 1993 when she bought her insurance. According to the plaintiff, her title was in fact impaired by the preexisting provision in the 1991 declaration that undermined her right to decline to consent to future subdivisions within West Hill Estates. The plaintiff analogizes her claim to one that would be raised by the belated discovery of an undisclosed third party mortgage. She argues, and the defendant does not dispute, that if such a mortgage had been recorded in 1991, the mortgagee's failure to exercise its right of foreclosure until 2005 would not have triggered the policy exclusion for adverse interests "attaching or created subsequent" to the date of the issuance of the policy.

The court rejected the plaintiff's contention on the ground that the reservation of a right for a future subdivision did not fall within the coverage that the insurance

policy provided, on October 4, 1993, for "any (1) defect in the [the plaintiff's] title or (2) any unmarketability of title or (3) any lack of access to and from the land or (4) that the title to the property was vested other than as stated in schedule A attached to the [policy]." More particularly, the court was not persuaded by the plaintiff's claim that the right to withhold consent to a future subdivision was an appurtenant right that came within the insurance policy's coverage for defects in her title. Other than citing to the court's opinion, the plaintiff's brief has not addressed this issue further.

Although this is a close call, we are inclined to disagree with the court's holding on this issue. In light of the well established principle that an ambiguity in an insurance policy must be construed against the insurer; *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, supra, 274 Conn. 463; we are not persuaded that a reasonable construction of this exclusionary clause categorically deprived the plaintiff of coverage of a right that at least arguably could be considered "attaching or created subsequent" to the date of her policy.

We need not resolve this issue definitively, however, because the plaintiff's insurance policy contained a second exclusionary clause that, as the court held, is unambiguously fatal to her claim for coverage. In schedule B, the plaintiff's insurance policy provides: "This policy does not insure against loss or damage (and the [defendant] will not pay costs, attorney['s] fees or expenses) which arise by reason of . . . [t]he terms, conditions, agreements, covenants, restrictions, reservations and easements contained in a Declaration of West Hill Estates by Stratton Brook Properties et al. dated March 28, 1991 and recorded June 5, 1991 in Volume 138 at page 866 and amended as follows: 1st Amendment dated April 30, 1992 and recorded May 5, 1992 in Volume 144 at Page 72 of the New Hartford Land Records." The court held that this provision established, as a matter

of law, that the defendant had "no duty under the policy to defend or indemnify [the plaintiff] in connection with the alleged infringement of [the plaintiff's] rights under the declaration."

Aside from proffering an unsubstantiated claim of ambiguity, the plaintiff argues that the court's ruling was improper because the defendant's reliance on schedule B is inconsistent with the defendant's position that the plaintiff's claim for coverage was precluded by exclusion 3 (d). According to the plaintiff, the defendant cannot be permitted to argue simultaneously that the 1991 declaration has *no bearing* on insurance coverage for existing claims but *definitively bars* insurance coverage for all claims. The difficulty with the plaintiff's position is that it assumes that which she needs to prove. The plaintiff cites no authority for the proposition that exclusions in an insurance policy must be internally consistent. More importantly, the record does not disclose that the court addressed an argument of inconsistency or that it was asked to do so.

We conclude, therefore, that the court properly found that the plaintiff failed to prove her claim, under count four of her complaint, that the defendant had a contractual duty to defend her or to indemnify her in her litigation with the Cases. In the absence of any disputed issues of fact, the unambiguous exclusion contained in schedule B unquestionably defeats the plaintiff's claim that her policy with the defendant entitles her to coverage for this dispute.

## III

## GOOD FAITH AND FAIR DEALING

Count five of the plaintiff's complaint charged the defendant with having failed to honor its duty of good faith and fair dealing to the plaintiff in two respects. The plaintiff alleged that the defendant had (1) unfairly

conducted its insurance business so as to give the Cases preferential treatment and (2) disclosed confidential insurance information about the plaintiff to other insureds. The court agreed with the defendant that neither of these claims had any validity. We agree as well.

The court found the plaintiff's first claim unpersuasive because she failed to establish that the defendant's business relationship with the Cases impaired her right to enforce any benefits to which she was entitled under her policy. If, hypothetically, the defendant "gratuitously" extended coverage to the Cases, "this act did not injure [the plaintiff's] right . . . to receive a benefit because [the plaintiff] had no right to a benefit. This remains true even if the Cases' claim for coverage is weak or was based on a policy issued without a title search."

On appeal, the plaintiff claims that the court improperly required her to show a linkage between her allegations of lack of good faith and the terms of her insurance contract. She cites our Supreme Court's decision in *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 240, 915 A.2d 290 (2007), for the proposition that "[w]hether a party has acted in bad faith is a question of fact, subject to review only for clear error." The plaintiff appears to argue that, regardless of the terms of the contract, she is always entitled to have a trier of fact resolve the merits of her claim of lack of good faith.

The plaintiff's argument cannot be sustained in light of our Supreme Court's predicate statement, in the immediately preceding paragraph in the opinion that she cites, that "[t]he covenant of good faith and fair dealing presupposes that *the terms and purpose of the contract* are agreed upon by the parties and that what is in dispute is a party's discretionary *application or interpretation of a contract term. . . .* To constitute

a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive *under the contract* must have been taken in bad faith." (Emphasis added; internal quotation marks omitted). Id.[4] In light of this well established principle, the court properly construed the allegations in the plaintiff's count five as referencing by implication the contract claims stated in count four.

The plaintiff faults the court for restricting its contract analysis to the express terms of her insurance contract. She has not, however, proffered an analysis of any relevant terms that might reasonably be implied therefrom. Instead, the plaintiff argues that the defendant acted in bad faith by failing to exercise its discretion not to enforce the exclusionary clauses in her own contract because it was simultaneously exercising its discretion to afford greater coverage to the Cases. This argument assumes that the two insurance contracts, although issued at different times with respect to different properties, were identical in fact or were required to be identical in law. Because the plaintiff has cited no authority to establish the validity of these assumptions, we agree with the court's resolution of this issue.

In addition to her claim that the defendant acted in bad faith by its preferential treatment of the Cases, the plaintiff alleged that the defendant, in bad faith, had "shared confidential underwriting and claim information of one of its policyholders with another one of its policyholders who holds an adverse interest." In response to this allegation, the defendant submitted the affidavit of its claims counsel that, apart from information disclosed to all counsel of record, the defendant had not provided to any of its policyholders any information about the plaintiff's insurance policy or about

---

[4] Indeed, in the absence of such a limitation, it is difficult to see how a motion for summary judgment in a contract action could ever succeed.

the plaintiff's claim for coverage. The court found that "[n]one of the documentation submitted by [the plaintiff] contradicts this affidavit." In light of this state of the record, the court found that there was "no genuine issue of material fact regarding this claim."

The plaintiff maintains that the court had evidence from which it might have inferred that the defendant routinely failed to protect policyholder confidentiality and divulged information about her insurance policy to another policyholder. At best, however, that evidence concerned disclosure of information about the Cases policy and does not demonstrate unauthorized disclosures about the plaintiff's policy. The court was not required to go beyond what the record contained.

The plaintiff's more serious claim is that the court did not afford her the opportunity to conduct the discovery that would have enabled her to challenge the representations in the defendant's affidavit. The record before us contains the transcript of a hearing before the court in which the plaintiff unsuccessfully sought a continuance to enable her to undertake further discovery. In this appeal, the plaintiff has not referenced this hearing and has made no attempt to show that the court's denial of her motion was an abuse of its discretion. See *State* v. *Ross V.*, 110 Conn. App. 1, 7, 953 A.2d 945 (court's discretion whether to grant continuance will not be disturbed on appeal absent abuse of discretion), cert. denied, 289 Conn. 939, 958 A.2d 1247 (2008). The plaintiff's bare allegation that she was prejudiced by the court's denial of her request for further discovery does not establish that the court acted improperly.

In sum, we agree with the court that the defendant was entitled to summary judgment because the terms of the plaintiff's insurance policy did not provide coverage for her dispute about subdivision rights reserved

in the declaration that established her planned community. Furthermore, the implied covenant of good faith and fair dealing did not require the defendant to waive exclusions in the plaintiff's insurance policy, even if it were found to have exercised a contrary option with respect to another policyholder with a comparable insurance policy.

The judgment is affirmed.

In this opinion the other judges concurred.